# IN THE SUPREME COURT OF IOWA

No. 14–0288

Filed December 26, 2014

Amended: March 10, 2015

**IN THE INTEREST OF J.C.,**
     Minor Child.

**D.C.,** Father,
     Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Constance Cohen, Associate Juvenile Judge.

The State and a child's guardian ad litem seek further review of a court of appeals decision reversing a juvenile court order dismissing the child's established father as a necessary party in child in need of assistance proceedings and termination of parental rights proceedings. **DECISION OF COURT OF APPEALS VACATED; DECISION OF JUVENILE COURT AFFIRMED.**

Colin R. McCormack, Van Cleaf & McCormack Law Firm, L.L.P., Des Moines, for appellant father.

Amanda M. DeMichelis, Chariton, for mother.

Thomas J. Miller, Attorney General, and Bruce L. Kempkes, Assistant Attorney General, and Stephanie E. Brown, Assistant County Attorney, for appellee.

Michael J. Bandstra, Bandstra Law Office, Des Moines, attorney and guardian ad litem for minor child.

**ZAGER, Justice.**

This further review requires us to determine whether under the applicable juvenile statutes an established, or legal, father who is not a biological or adoptive father is a necessary party to child in need of assistance (CINA) proceedings and termination of parental rights proceedings. Daniel is J.C.'s established father; he is not her biological or adoptive father. After a hearing on the motion to determine paternity filed by the child's guardian ad litem, the juvenile court concluded under the applicable statutes that Daniel was not a necessary party to the CINA proceedings and termination of parental rights proceedings and dismissed him as a party. Daniel appealed, and the court of appeals reversed. The court of appeals found the applicable statutes unambiguous, but concluded that the express language of the statutes leads to the absurd result of excluding Daniel as a necessary party to the CINA proceedings. Therefore, the court of appeals held Daniel was a necessary party to the CINA proceedings and reversed the juvenile court. The child's guardian ad litem and the State sought further review, which we granted. For the reasons set forth below, we vacate the decision of the court of appeals and affirm the decision of the juvenile court.

## I. Background Facts and Proceedings.

J.C. was born to Khrista on December 26, 2010. At that time, Khrista was an inmate at the Iowa Correctional Institution for Women. When Khrista was incarcerated in May 2010, an intake medical examination revealed she was pregnant.

Daniel wrote to Khrista and began coming to visit her in prison in July. On December 3, 2010, after Daniel had spoken with an attorney about his rights to the unborn child, Khrista and Daniel were married at the prison.

Daniel and Khrista had not been romantically involved before Khrista was incarcerated, but the two were friends. Daniel and Khrista first met at an Alcoholics Anonymous meeting in 2008, and they continued to socialize at subsequent meetings. Outside of the meetings, they had coffee a couple of times. Daniel and Khrista never dated or had sexual relations before they were married or before J.C. was born.

Daniel and Khrista knew Daniel is not J.C.'s biological father, and DNA testing confirmed J.C.'s biological father is Robert. Nonetheless, after J.C. was born, J.C. was released to Daniel's custody because he is J.C.'s established father based on his marriage to Khrista. *See Callender v. Skiles*, 591 N.W.2d 182, 185 (Iowa 1999) (citing Iowa Code § 600B.41A(1) (1997)). "Khrista wanted Dan[iel] to take care of [J.C.] so she didn't lose [custody of] her." While Khrista was in prison, Daniel took J.C. to visit Khrista on weekends so mother and daughter could bond. Daniel and J.C. missed visits to the prison on just two weekends.

Daniel cared for J.C. on his own until Khrista was paroled in May 2013. After her release, Khrista moved in with Daniel and J.C. However on June 25, Daniel filed for divorce after Khrista moved out with J.C. and assumed custody of J.C. Robert eventually filed a petition in district court to disestablish Daniel's paternity.

J.C. came to the attention of the Iowa Department of Human Services (DHS) in late October when it was alleged Khrista was using methamphetamine. A child protection worker met with Khrista, who denied current methamphetamine use. Khrista's parole officer confirmed that Khrista had recently tested negative for methamphetamine, opiates, and benzodiazepines. On October 30, Khrista submitted to a hair drug test.

On November 3, Urbandale police stopped a vehicle driven by Khrista. Also in the car were J.C., one of Khrista's other children, and a male passenger. Police discovered two small bags of methamphetamine, and Khrista admitted it belonged to her. She also confessed to smoking methamphetamine the day before. On November 5, DHS received the results of Khrista's October 30 drug test. The test came back positive for methamphetamine.

On November 5, the State filed an application for order of temporary removal in juvenile court. The juvenile court granted the application that same day and temporarily placed J.C. in Daniel's custody. Thereafter, on November 7, while Robert's petition to disestablish Daniel's paternity was pending in district court, the State filed a CINA petition. The CINA petition identified Daniel as J.C.'s established father and Robert as J.C.'s biological father. The State sent notices to Khrista, Robert, and Daniel. On November 14, however, the juvenile court ordered J.C. removed from Daniel's care because he had tested positive for methamphetamine. That same day, the State received the results of a drug test performed on J.C. The test results showed that J.C. also tested positive for the presence of amphetamine and methamphetamine.

After a hearing on December 19, the juvenile court adjudicated J.C. a child in need of assistance under Iowa Code sections 232.2(6)(*c*)(2),

(*n*), and (*o*) (2013).[1]  On January 17, 2014, the State filed a petition to terminate the parental rights of Khrista and Robert as the parents of J.C.[2]  Daniel was also served a copy of the petition and the juvenile court appointed counsel to represent him.

On February 7, J.C.'s guardian ad litem filed a motion to determine paternity in the CINA proceedings.  The motion requested "that the Juvenile Court make a finding that pursuant to Iowa Code [chapter] 232, Robert . . . is the 'father' of the child herein."  Daniel resisted the motion.  On February 25, the juvenile court held a hearing on the motion at which Daniel testified.

The juvenile court issued its order on February 27.  The juvenile court first clarified that the proceedings involving the parties pending in district court "came to an instant halt" when the CINA proceedings were initiated because the juvenile court "exercises exclusive jurisdiction over all matters involving custody, guardianship or placement of a child"

---

[1]Iowa Code section 232.2(6) provides, in relevant part:

"*Child in need of assistance*" means an unmarried child:

. . . .

*c.* Who has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

. . . .

*n.* Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.

*o.* In whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian.

[2]The juvenile court has since terminated Khrista and Robert's parental rights.

unless the juvenile court grants concurrent jurisdiction. *See id.* §§ 232.3(1), .61(1).

The juvenile court observed Iowa Code section 232.91 unambiguously includes only parents, guardians, custodians, and guardians ad litem as necessary parties. The juvenile court determined Daniel was not a guardian, custodian, or guardian ad litem, leaving only the possibility he is a parent. Under Iowa Code chapter 232, the juvenile court observed, a parent is "clearly . . . a biological or adoptive mother or father of a child." The juvenile court found Daniel is neither J.C.'s biological father nor her adoptive father. The juvenile court therefore concluded that Daniel was not a necessary party in the pending CINA proceedings and termination of parental rights proceedings. Accordingly, the juvenile court dismissed Daniel as a party.

Daniel filed an application for interlocutory appeal of the juvenile court order. Assuming without deciding the juvenile court's order was not a final judgment, we granted the application and transferred the case to the court of appeals.

The court of appeals reversed the juvenile court. The court of appeals agreed the statutory definition of "parent" under Iowa Code chapter 232 did not include established fathers. However, it reasoned a literal reading of the statute produced "legally absurd consequences that undermine the clear purpose of the statute." Consequently, the court of appeals concluded an established father is a parent under Iowa Code section 232.2(39) and "is entitled to participate in a CINA proceeding involving the father's [established] child to the same extent as a biological or adoptive father."

We granted the applications for further review filed by the guardian ad litem and the State.

## II. Standard of Review.

We generally review CINA proceedings and termination of parental rights proceedings de novo. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). When so doing, "[w]e review both the facts and the law, and we adjudicate rights anew." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) (internal quotation marks omitted). When the issue requires statutory interpretation, however, we review for correction of errors at law. *See In re G.J.A.*, 547 N.W.2d 3, 5 (Iowa 1996). As always, our fundamental concern is the child's best interests. *K.N.*, 625 N.W.2d at 733.

## III. Discussion.

The primary issue on further review is whether under Iowa Code section 232.91(1), an established father is a parent. The legislature has specifically directed courts to liberally construe Iowa Code chapter 232 to achieve "the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1.

In addition, several settled principles of statutory interpretation arise here. *See State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013) (compiling "our time-honored principles of statutory construction"). We seek the legislature's intent when interpreting statutes. *Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013). We give words in statutes their common, ordinary meaning in the context within which they are used unless the words are defined in the statute or have an established legal meaning. *In re Estate of Bockwoldt*, 814 N.W.2d 215, 223 (Iowa 2012). When the legislature has defined words in a statute—that is, when the legislature has opted to " 'act as its own lexicographer' "—those definitions bind us. *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010) (quoting *Henrich v. Lorenz*, 448 N.W.2d 327, 332 (Iowa 1989)); *see also*

*Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997) ("[W]here the legislature defines its own terms and meanings in a statute, . . . definitions which may not coincide with the legislative definition must yield to the language of the legislature." (Internal quotation marks omitted.)). We assess the whole statute, not just isolated words and phrases. *Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R.*, 826 N.W.2d 507, 512 (Iowa 2013). We look no further than the statute's language when the statute is unambiguous. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014). In other words, unambiguous statutory language is the strongest evidence of the legislature's intent. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) ("When the language is unambiguous, it expresses the intent of the legislature that can otherwise be obscured by ambiguous language in a statute."). "Under the pretext of construction, we may not extend a statute, expand a statute, or change its meaning." *Bank of Am., N.A.*, 843 N.W.2d at 880.

The juvenile court has exclusive jurisdiction over CINA proceedings. Iowa Code § 232.61(1). CINA proceedings may not take place without the presence of statutorily identified necessary parties. Iowa Code § 232.91(1). Pursuant to Iowa Code section 232.91(1), the necessary parties to CINA proceedings include "the child's parent, guardian, custodian, or guardian ad litem." Daniel does not contend he is J.C.'s guardian, custodian, or guardian ad litem. Rather, he contends he is J.C.'s parent because he is her established father.

The guardian ad litem and the State concede Daniel is J.C.'s established father for certain purposes under the Iowa Code. *See, e.g.*, Iowa Code § 144.13(2) ("If the mother was married at the time of . . . birth, . . . the name of the husband shall be entered on the [birth] certificate as the father of the child . . . ."); *id.* § 252A.3(4) ("A child . . .

born of parents who, at any time prior . . . to the birth of such child, have entered into a civil or religious marriage ceremony, shall be deemed the legitimate child . . . of both parents . . . ."); *id.* § 598.31 ("Children born to the parties, or to the wife, in a marriage relationship . . . shall be legitimate as to both parties."); *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 344 (Iowa 2013) (holding that in Iowa the putative parent is the equivalent of a biological parent, unless a person rebuts the presumption by " 'clear, strong, and satisfactory evidence' "); *Callender*, 591 N.W.2d at 185 (recognizing "[t]he law deems" a married man to be the father of his wife's child "by virtue of his marriage"). Despite these presumptions, the guardian ad litem and the State contend Daniel is not a parent for purposes of Iowa Code section 232.91(1).

The guardian ad litem and the State point to the specific definition of "parent" found in Iowa Code chapter 232. Under Iowa Code chapter 232, which governs CINA proceedings, " '*Parent*' means a biological or adoptive mother or father of a child . . . ." Iowa Code § 232.2(39). Daniel is neither J.C.'s biological nor her adoptive father, and he does not claim to be. However, Daniel contends that interpreting the definition of "parent" literally produces absurd consequences, such as excluding established fathers from CINA proceedings involving their established children. Thus, he argues we should reject the express language of the statute in favor of a broader interpretation that includes established fathers as necessary parties under section 232.91(1). The State and the guardian ad litem both argue Iowa Code section 232.91(1), when read in connection with the statutory definition of parent is clear and unambiguous. Therefore, they insist, we must apply the statute literally and hold Daniel is not a necessary party to the CINA proceedings.

The provisions of Iowa Code section 232.91(1) and the definition of "parent" under review are unambiguous. The legislature, through clear language, specified necessary parties to CINA proceedings. *See id.* § 232.91(1). The child's parent is one necessary party. *See id.* The legislature, again through clear language, defined a "parent" as a "biological or adoptive mother or father." *Id.* § 232.2(39). Daniel is undisputedly not J.C.'s biological or adoptive parent. Therefore, he is not a necessary party to the CINA proceedings involving J.C.

The legislature's decision to limit the necessary parties to biological or adoptive mothers or fathers does not preclude established parents from participating in those proceedings. Under Iowa Code section 232.91(2), a "person," a term that is not defined in chapter 232, "may petition the court to be made a party to [CINA] proceedings . . . ." The court of appeals has held similarly permissive language in Iowa Code section 232.91 means the decision whether to make the petitioner a party "is within the court's discretion." *In re T.M.C.*, 429 N.W.2d 165, 167 (Iowa Ct. App. 1988). In this case, the CINA petition identified Daniel as J.C.'s established father, Daniel received notice of the CINA proceedings, and he actively participated in the proceedings. However, when paternity was clearly established in Robert, the juvenile court, upon the guardian ad litem's motion and after a hearing, properly dismissed him as a necessary party. The participation of established fathers in CINA proceedings, as happened in this case, thus does not contravene the relevant statutes. When presented with the guardian ad litem's motion, the juvenile court correctly concluded based on the unambiguous language of the statute that Daniel was no longer a necessary party to the CINA proceedings.

We will not expand or extend these statutes to include established fathers when the text of the statutes demonstrates the legislature's intent not to do so. *See Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010) ("We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction."); *see also State v. Nicoletto*, 845 N.W.2d 421, 432 (Iowa 2014) (stating that decision whether certain individuals "should be drawn into" a statute "is a matter for the legislature"), *superseded by statute*, 2014 Iowa Acts ch. 1114, § 1 (to be codified at Iowa Code § 709.15(f)); *In re Det. of Geltz*, 840 N.W.2d 273, 276 (Iowa 2013) (" 'When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms.' " (Quoting *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998))); *McGill*, 790 N.W.2d at 118 ("We do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear.").

Further, this result heeds the legislature's instruction to the courts to construe liberally chapter 232 to "serve the child's welfare and the best interest of the state." Iowa Code § 232.1. Efficient and timely resolution of juvenile proceedings serves the interests of the child and the state. Our statutes and court rules reflect this proposition. "It is the public policy of the state of Iowa that proceedings involving . . . [CINA] be concluded at the earliest possible time consistent with a fair hearing to all parties." Iowa Ct. R. 8.7. An adjudicatory hearing on a CINA petition must "be held within 60 days of the filing of said petition unless good cause to the contrary is shown." *Id.* r. 8.11. A permanency hearing "for a child subject to out-of-home placement" must "be held within twelve months of the date the child was removed from the home." Iowa Code § 232.104(1)(*a*)(1); *see also id.* § 232.104(1)(*a*)(2) (requiring a permanency

hearing within thirty days if "the court has waived reasonable efforts requirements under section 232.102"). Our statutes and court rules reflect the understanding that promptly resolved juvenile proceedings best serve children's interests.

Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not "await the wanderings of judicial process." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). By narrowly defining "parent" under chapter 232, and thereby narrowing the scope of necessary parties under Iowa Code section 232.91(1), the legislature gave courts another tool to resolve juvenile proceedings in a timely fashion. Were we to expand on the express language of the two statutes, we would impede the legislature's worthy objective. As the juvenile court observed,

> It is good policy to narrow the number of necessary parties to avoid superfluous litigation that will bog down timely decision making for children in need of assistance and distract the Court from the core issue of the child's best interest.

The express language of the statutes at issue in this case serves the best interests of the child.

Finally, the express language of the statute does not produce absurd consequences. Establishing absurdity in an unambiguous statute is difficult for good reason. *Cf. State v. Wedelstedt*, 213 N.W.2d 652, 656–57 (Iowa 1973) ("If changes in the law are desirable from a policy . . . standpoint, it is for the legislature to enact them, not for the court to incorporate them by interpretation." (Internal quotation marks omitted.)). We have explained that "we will not ignore clear legislative language merely because it leads to a result that seems contrary to the court's expectations." *Sherwin-Williams Co. v. Iowa Dep't of Revenue*,

789 N.W.2d 417, 427 (Iowa 2010); *see also Anderson v. State*, 801 N.W.2d 1, 9 (Iowa 2011) (declining to apply the absurd results doctrine because it "would risk substituting our judgment for that of the legislature"). The express language must produce a result that is " '*demonstrably at odds* with the intention' " of the legislature. *Sherwin-Williams Co.*, 789 N.W.2d at 429 (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:4, at 178 (7th ed. 2007)). Narrowing the class of necessary parties is not demonstrably at odds with the legislature's intent under chapter 232. As shown above, including established fathers as necessary parties in CINA proceedings would slow the process of bringing stability and permanency to the child's life. The express language of sections 232.91(1) and 232.2(39) expedites the process. Thus, applying the statute literally advances the legislature's legitimate intent.

Furthermore, a broader examination of chapter 232 does not indicate applying the definition of "parent" literally is absurd. As the guardian ad litem notes, a CINA adjudication for a child may be based on an act or omission of an individual other than a parent. To that end, in various provisions in chapter 232, the legislature coupled carefully defined, discrete terms, such as parent, guardian, or custodian, with a capacious or undefined term to reach individuals whose relationship to a child is less precisely delineated. In this case, for example, one of the provisions under which the juvenile court adjudicated J.C. was Iowa Code section 232.2(6)(*c*)(2). This provision defines a child in need of assistance as a child

> [w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, *or other member of the household in*

> *which the child resides* to exercise a reasonable degree of
> care in supervising the child.

Iowa Code § 232.2(6)(*c*)(2) (emphasis added).  This provision enables a CINA adjudication if a member of the child's household other than one of the three specifically defined parties fails to exercise reasonable care in supervising the child.  This provision has clear potential to encompass a wide range of individuals who could come into contact with the child.  Other provisions aimed at different conduct are phrased similarly.  *See, e.g., id.* § 232.2(6)(*b*) (defining a child in need of assistance as one who has been or is imminently likely to be abused or neglected by a "member of the household in which the child resides").  In these provisions, the legislature coupled the three defined terms with an undefined term meant to broaden the provision's scope to reach others.  To connect the terms the legislature used the disjunctive conjunction "or."

In another provision, the legislature used a similar structure, but this time used an expansive, defined term to cover more individuals who could come into contact with the child.  Under this provision, a child in need of assistance is a child

> [w]ho has suffered or is imminently likely to suffer harmful effects [because] . . . [t]he child's parent, guardian, or custodian, *or person responsible for the care of the child, as defined in section 232.68*, has knowingly disseminated or exhibited obscene material . . . to the child.

Iowa Code § 323.2(5)(*c*)(3) (emphasis added).  Under Iowa Code section 232.68, located in the portion of chapter 232 designed to protect children from child abuse, a "[p]erson responsible for the care of a child" is, among others, "[a]ny person providing care for a child . . . without reference to the duration of the care." *Id.* § 232.68(7)(*d*).  Thus, similar to other provisions in chapter 232, the legislature coupled the defined, discrete term "parent" with another term meant to cover more

individuals, in this provision selecting particularly expansive language. Here again, the legislature used the disjunctive conjunction "or" to connect the terms.

As this review of these code provisions demonstrates, the legislature crafted a narrow and specific definition of "parent" under chapter 232. But where it deemed necessary, it coupled the term with more encompassing language meant to embrace other individuals whose acts or omissions could threaten the child's welfare and best interests. The use of the disjunctive conjunction "or" to connect the terms implies the legislature intended "parent," as well as "guardian" and "custodian," to mean something different than the more encompassing terms. *See T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999) (inferring the legislature intended two statutory terms connected by "or" have different meanings). Expanding the legislature's definition of "parent" could disrupt this carefully designed statutory scheme by expanding the scope of the discrete term into territory covered by other statutory terminology. In other words, expanding the definition of "parent" to include established fathers could create redundancy in spite of the textual indications the legislature intended to avoid such redundancy. We generally interpret statutes to avoid redundancy. *Hardin Cnty. Drainage*, 826 N.W.2d at 512. Applying the definition of "parent" literally is therefore not absurd. Rather, applying the definition literally preserves the legislature's carefully designed scheme. We thus conclude that applying the statute as written does not produce a result that is demonstrably at odds with the legislature's intent. Therefore, applying the express language of the statute in this case does not produce absurd results.

But this does not end our analysis. As a result of the CINA adjudication, a petition to terminate parental rights was filed on January 17, 2014. In addition to Khrista and Robert, Daniel was also served with the original notice and petition for termination of parental rights, and counsel was appointed to represent him. Thereafter, paternity test results confirmed Robert is J.C.'s biological father. In response, the guardian ad litem filed a motion to determine paternity, which was resisted by Daniel. The issues then become whether Daniel continued to be a necessary party to the termination proceedings, and whether the juvenile court has the authority to determine paternity as part of termination of parental rights proceedings.

As discussed above, CINA proceedings may not take place without the presence of statutorily identified necessary parties. Likewise, termination proceedings may not take place without the presence of statutorily identified necessary parties. However, the statutorily identified necessary parties for termination proceedings are different than the statutorily identified necessary parties for CINA proceedings.

In relevant part, Iowa Code section 232.111(4) provides:

A petition for termination of parental rights shall include the following:

*a.* The legal name, age, and domicile, if any, of the child.

*b.* The names, residences, and domicile of any:

(1) Living parents of the child.

(2) Guardian of the child.

(3) Custodian of the child.

(4) Guardian ad litem of the child.

(5) Petitioner.

(6) Person standing in the place of the parents of the child.

In turn, Iowa Code section 232.112(1) provides in relevant part:

Persons listed in section 232.111, subsection 4, shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard . . . . In addition to the persons who are necessary parties who may be parties under section 232.111, notice for any hearing under this division shall be provided to the child's foster parent, an individual providing preadoptive care for the child, or a relative providing care for the child.

In our review of the clear and unambiguous language of the statute, Daniel was not a necessary party to the termination proceedings. Daniel is not J.C.'s parent within the meaning of the juvenile code, as he is neither her biological nor her adoptive father. *See* Iowa Code §§ 232.2(39), .111(4)(*b*)(1). Further, it is not disputed that at the time Daniel was dismissed from the proceedings he was not J.C.'s guardian, custodian, guardian ad litem, or the petitioner. *See id.* § 232.111(4)(*b*)(2)–(5). Arguably, Daniel may have been a person standing in the place of the parents of the child. *See id.* § 232.111(4)(*b*)(6). After the CINA proceedings were initiated, Daniel obtained temporary custody of J.C. for a brief period of time. However, J.C. was removed from Daniel's care when he tested positive for methamphetamine. From November 2013 to February 25, 2014, when the juvenile court held the hearing to determine paternity, Daniel was not involved in providing care for J.C. Since the record established that Daniel is not the biological father of J.C., and Daniel had not been caring for J.C. for over three months, Daniel was no longer a person standing in the place of the parents of J.C. This, notwithstanding the fact that he remained her established father for other purposes. Daniel was no longer a necessary party to the termination proceedings as defined in Iowa Code sections 232.111(4) and 232.112(1). The juvenile court was

correct in dismissing Daniel from the termination proceedings involving Khrista and Robert.

We also conclude the juvenile court did not act beyond its authority when it determined Daniel was not J.C.'s biological father as part of the termination of parental rights proceedings. While chapter 232 does not expressly provide the juvenile court with the authority to determine an established father's biological or adoptive status, it impliedly does so by limiting the parties who may participate in both CINA proceedings and termination of parental rights proceedings. *See id.* §§ 232.2(39), .91(1), .111(4)(*b*), .112(1). Juvenile courts clearly have the authority to make the factual determination of whether a person qualifies as a necessary party, which inherently requires them to determine whether a person qualifies as a child's biological parent.

Moreover, we find that it would be problematic to hold that juvenile courts lack the authority to make paternity determinations before terminating parental rights. In *In re B.G.C.*, the biological mother of a child signed a release for the termination of her parental rights to her child. 496 N.W.2d 239, 240 (Iowa 1992). She identified one man as the biological father of the child, who also signed a release of his parental rights. *Id.* at 241. Thereafter, the child was put up for adoption, and custody of the child was transferred to the potential adoptive parents. *Id.* It later came to light that another man was the child's true biological father. *Id.* The true biological father subsequently intervened in the adoption proceedings to assert his parental rights. *Id.* Ultimately, the adoption was denied by the district court, and the child was ordered to be placed with the true biological father. *Id.* On appeal, we affirmed the district court's dismissal, reasoning that because the true biological father had not consented to the termination of his parental rights, and

because his parental rights had not otherwise been properly terminated, the adoption proceedings were fatally flawed. *Id.* at 241, 245.

*In re B.G.C.* clearly demonstrates why the juvenile court must have the authority to make determinations as to who is the child's biological parent in termination of parental rights proceedings. In a case where a child's biological father is known, but not disclosed to the juvenile court, the juvenile court may erroneously proceed on the assumption that the child's established father is the biological father. If the court were to terminate the parents' rights, the unidentified biological father could later come forward and upset a subsequent placement of the child. Consequently, if the juvenile code did not confer on the juvenile court the authority to make paternity determinations in termination of parental rights proceedings, stability and the best interests of the child would suffer.

We recognize that other sections of the Iowa Code rely on paternity presumptions in order to "preserv[e] the integrity of the family, [further] the best interests of the child, and [further the goal of] administrative convenience." *Callender*, 591 N.W.2d at 191; *see, e.g.*, Iowa Code § 144.13(2); *id.* § 252A.3(4); *id.* § 598.31. In these contexts, presuming paternity based on marital status at the time of a child's birth promotes the efficient resolution of divorce and custody matters throughout our court system by not requiring that parties to such proceedings affirmatively establish paternity in all cases. That said, these presumptions can be overcome by the court according to the proof, and cannot serve to extinguish the rights of biological parents. *See Callender*, 591 N.W.2d at 192 ("We find a putative father of a child born into a marriage may have a right to standing to challenge paternity under

the Due Process Clause of the Iowa Constitution."); *B.G.C.*, 496 N.W.2d at 245.

Biological parents have a due process right to notice and a hearing before termination of their parental rights may occur. *Callender*, 591 N.W.2d at 190 ("Although we also recognize the rights of *biological parents* are not absolute, and may be lost, we have required notice and a hearing before termination may occur." (Emphasis added.)). The juvenile code observes and respects this right by requiring that biological parents be made parties to CINA proceedings and termination proceedings. *See id.* §§ 232.2(39), .91(1), .111(4)(*b*), .112(1). By extension, the requirement that biological parents be made parties to such proceedings serves the best interests of the child by ensuring that subsequent placements are not later upset, to the detriment of the child. Consequently, when it becomes apparent to the juvenile court that a child's established father is not the child's biological father, determining the child's biological father both honors the biological father's due process rights and also serves to make subsequent placement decisions sounder, thereby providing stability for the child. The juvenile court did not exceed its authority in determining Daniel is not J.C.'s biological father as part of the termination of parental rights proceedings.

We recognize that Iowa Code section 598.31 establishes Daniel as J.C.'s established father for dissolution of marriage purposes and for all the rights and obligations that arise in that context.[3] Iowa Code section 600B.41A also provides nonbiological established fathers with an adequate avenue to overcome the presumption of paternity in the civil context and to remedy such obligations where unwarranted. *See* Iowa

---

[3] The record is devoid of any mention of a child support obligation for Daniel.

Code § 600B.41A(4);[4] *see also Dier v. Peters*, 815 N.W.2d 1, 14 (Iowa 2012) (recognizing paternity fraud as a viable cause of action). However, these various civil proceedings are clearly beyond the authority of the juvenile court to resolve.

Nothing in the juvenile code warrants a blanket extension of rights to all established fathers to participate in CINA or termination cases. But our holding here does not exclude *all* nonbiological established fathers from participating in CINA proceedings or termination of parental rights proceedings. As noted above, there may be circumstances where a juvenile court would allow a nonbiological established father to remain a part of the juvenile proceedings. For example, in the CINA context, Iowa Code section 232.91(2), provides a "person . . . may petition the court to be made a party to [CINA] proceedings . . . ." Further, in some termination of parental rights cases, an established father may be a necessary party where the court makes the factual determination that he "stand[s] in the place of the parents of the child." *See* Iowa Code §§ 232.111(4)(*b*)(6), .112(1).

Finally, Daniel was not left without a legal remedy after he was dismissed from the termination proceedings for not being a necessary party due to his lack of paternity. Rather than appealing on the issue of

---

[4]In relevant part, Iowa Code section 600B.41A(4) provides:

If the court finds that the establishment of paternity is overcome . . . the court shall enter an order which provides all of the following:

*a.* That the established father is relieved of any and all future support obligations owed on behalf of the child from the date that the order determining that the established father is not the biological father is filed.

*b.* That any unpaid support due prior to the date the order determining that the established father is not the biological father is filed, is satisfied.

whether he was a necessary party to the termination proceedings, Daniel still had the right to petition to intervene in the subsequent proceedings. In relevant part, Iowa Code section 232.117(3) provides:

> If the court terminates the parental rights of the child's parents, the court shall transfer the guardianship and custody of the child to one of the following:
>
> . . . .
>
> *c.* A parent who does not have physical care of the child, other relative*, or other suitable person.*

(Emphasis added.) "Thus, after a juvenile court terminates the parental rights of a child's natural parents, those qualifying as 'suitable persons' under section 232.117(3) are given the legal right to be considered as the child's guardian." *In re H.N.B.*, 619 N.W.2d 340, 343 (Iowa 2000). Upon the filing of a petition to intervene, the inquiry is not whether a party is a necessary party, but rather an interested party. *See In re J.R.*, 315 N.W.2d 750, 752 (Iowa 1982), *modified by In re B.B.M.*, 514 N.W.2d 425, 428 & n.1 (Iowa 1994). "The test of the right to intervene is 'interest,' not necessity." *Id.* " 'One interested in an action is one who is interested in the outcome or result thereof because he [or she] has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree therein.' " *Id.* (quoting 59 Am. Jur. 2d *Parties* § 138, at 567 (1971)).

"The term 'suitable person' is not defined by our legislature." *H.N.B.*, 619 N.W.2d at 343. "Instead, it is a flexible term which provides the [juvenile] court with discretion to determine the 'suitable person' status based on the particular facts of each petition for intervention." *Id.* This flexible inquiry turns on factors such as "the closeness of the relationship between the child in interest and the intervenor," *id.* at 344, the "existence of other prospective adoptive parents who maintain a strong relationship with the child," *id.*, or medical necessity, *B.B.M.*, 514

N.W.2d at 430–31. In determining whether an applicant has a legal interest, we examine the source of the right claimed. *In re A.G.*, 558 N.W.2d 400, 403 (Iowa 1997). Statutes provide guidance in determining who possesses the right to intervene. *H.N.B.*, 619 N.W.2d at 343. Ultimately, "the focus must always include the welfare and best interests of the child."[5] *Id.* at 344.

It is clear that Daniel, as an established but nonbiological father, had the right to petition the juvenile court to intervene in the termination proceedings after the parental rights of Khrista and Robert had been terminated. This is the appropriate mechanism provided in the juvenile code to protect his right to seek guardianship or custody of J.C. Daniel was not, however, a necessary party to the proceedings as defined in the juvenile code.

## IV. Conclusion.

Daniel is neither J.C.'s biological father nor her adoptive father. Although Daniel is J.C.'s established father, he is not her parent under chapter 232. Therefore, Daniel was not a necessary party under Iowa Code section 232.91(1). Further, Daniel was not a necessary party to the termination proceedings as he does not meet the statutory definitions in Iowa Code sections 232.111(4) and 232.112. The juvenile court was correct in dismissing Daniel as a necessary party to the juvenile proceedings.

**DECISION OF COURT OF APPEALS VACATED; DECISION OF JUVENILE COURT AFFIRMED.**

All justices concur except Wiggins, J., who dissents.

---

[5]This list is not exclusive. However, it is illustrative of the different standards the court must employ in reaching its decision on whether a party has a right to intervene for purposes of guardianship and custody.

**WIGGINS, Justice (dissenting).**

I respectfully dissent. The Iowa Code provides:

> If the mother was married at the time of conception, birth, or at any time during the period between conception and birth, the name of the husband shall be entered on the certificate as the father of the child unless paternity has been determined otherwise by a court of competent jurisdiction, in which case the name of the father as determined by the court shall be entered by the department.

Iowa Code § 144.13(2) (2009).[6] There is no factual dispute the State of Iowa listed Daniel as the father on the minor's birth certificate pursuant to section 144.13. In Iowa, the presumptive parent is the equivalent of a biological parent, unless a person rebuts the presumption " 'by clear, strong, and satisfactory evidence.' " *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 344 (Iowa 2013) (quoting *In re Marriage of Schneckloth*, 320 N.W.2d 535, 536 (Iowa 1982)). A child is entitled to financial support, inheritance rights, and financial obligations through their presumptive parent. *Id.* at 346–47. The presumption created by section 144.13(2) survives the dissolution of marriage between the parents, ensuring the child is entitled to continued support from the presumptive parent. *Id.* at 348.

The pertinent parts of the juvenile code relevant to this issue are as set forth below.

> As used in this chapter unless the context otherwise requires:
>
> . . . .

---

[6]The minor child was born on December 26, 2010.

'*Parent*' means a biological or adoptive mother or father of a child but does not include a mother or father whose parental rights have been terminated.

Iowa Code § 232.2(39) (2013).

A petition for termination of parental rights shall include the following:

   *a.* The legal name, age, and domicile, if any, of the child.

   *b.* The names, residences, and domicile of any:

   (1) Living parents of the child.

   (2) Guardian of the child.

   (3) Custodian of the child.

   (4) Guardian ad litem of the child.

   (5) Petitioner.

   (6) Person standing in the place of the parents of the child.

*Id.* § 232.111(4) (*a*)–(*b*).

Persons listed in section 232.111, subsection 4, shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard, except that notice may be dispensed with in the case of any such person whose name or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search. In addition to the persons who are necessary parties who may be parties under section 232.111, notice for any hearing under this division shall be provided to the child's foster parent, an individual providing preadoptive care for the child, or a relative providing care for the child.

*Id.* § 232.112(1).

The language of these statues includes a person standing in the place of the parents of the child and a relative providing care for the child. A relative providing care for the child would be a grandparent taking care of the child. On the other hand, a person standing in the

place of the parents of the child would be someone like a parent but not the biological parent. A presumptive parent is a person standing in the place of the parents of the child because the presumptive parents have all the rights and obligations of a biological parent until such time a putative parent rebuts the presumption by clear, strong, and satisfactory evidence.[7] Therefore, I would find Daniel to be a necessary party to the action and reverse the decision of the district court.

---

[7]A court can overcome the presumption of paternity if a putative parent files an action under section 600B.41A of the Iowa Code and proves among other things the presumptive parent is not the biological parent and it is in the best interest of the child to terminate the presumptive parent's rights. *See* Iowa Code § 600B.41 (setting forth all the elements needed to be established to overcome the presumption of paternity).

The statute provides that "[a] petition to overcome paternity may be filed only by the mother of the child, the established father of the child, the child, or the legal representative of any of these parties." Iowa Code § 600B.41A(3)(*a*)(1). We have also said that the Iowa Constitution requires that biological fathers also have the right to file such an action. *Callender v. Skiles*, 591 N.W.2d 182, 192 (Iowa 1999). Thus, if the juvenile court wants to terminate the rights of the presumptive parent, it could first terminate the biological parent's rights under chapter 232, appoint a guardian, and then order the guardian to bring an action under 600B.41A. If the juvenile court finds the presumptive parent to be a suitable parent, the juvenile court could place the child with the presumptive parent who would continue to have all the rights and obligations of a biological parent vis-á-vis the child.

Under the unique circumstances of this case, the juvenile court could have granted concurrent jurisdiction to the district court over the petition filed by the child's biological father to overcome the presumptive paternity if the court deemed it was in the best interest of the child for that termination action to proceed. However, it may be more prudent for the court not to grant concurrent jurisdiction when the juvenile court is going to terminate the biological father's rights.