# IN THE COURT OF APPEALS OF IOWA

No. 21-0275
Filed May 26, 2021

**IN THE INTEREST OF K.L.,**
**Minor Child,**

**N.W., Father,**
        Appellant,

**A.L., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Page County, Jennifer Bahr, District Associate Judge.

A father and mother separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Justin R. Wyatt of Woods, Wyatt, & Tucker, PLLC, Glenwood, for appellant father.

Ryan M. Dale, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Vicki Danley, Sidney, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., Ahlers, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VOGEL, Senior Judge.**

The father and mother of K.L., born in April 2019, separately appeal the termination of their parental rights. Because multiple difficulties continue to exist with each parent that prevent them from safely caring for K.L., we affirm the juvenile court's termination order.

Just days after K.L.'s birth, and while the child was still hospitalized, the Iowa Department of Human Services (DHS) sought to remove K.L. from the mother's care[1] "to avoid imminent danger to [K.L.'s] life or health." The application cited the umbilical cord blood results, which were positive for methamphetamine and amphetamines, and also noted the mother's extensive history of substance abuse and prior juvenile court involvement.[2] The court granted the temporary removal and approved the recommendations for services offered by DHS, including substance-abuse and mental-health evaluations with treatment for both parents. Upon the agreement of all parties, K.L. was adjudicated as a child in need of assistance (CINA) on June 18, 2019. Twenty months after K.L.'s removal, and with little progress by either parent to be able to safely parent K.L., the State petitioned to terminate both parents' parental rights. When the matter came on for hearing on December 17, 2020, the father was incarcerated but appeared telephonically; the mother did not appear. The court received offered exhibits and heard testimony. The court then found the State proved by clear and convincing evidence that parental rights should be terminated under Iowa Code section

---

[1] The father was incarcerated when K.L. was born. The father's paternity was established by a paternity test, the results of which were filed June 17, 2019.
[2] K.L. is the mother's sixth child. Her parental rights were terminated to the first five; the most recent termination order was filed on April 13, 2019.

232.116(1)(e), (g), and (h) (2020) as to the mother and section 232.116(1)(e) and (h) as to the father. The parents separately appeal.

We review termination-of-parental-rights proceedings de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). Our primary consideration is the child's best interests. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to focus on section 232.116(1)(h).[3] Both parents only challenge the findings as to the fourth element, which requires the State establish "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (stating "at the present time" refers to the point of the termination hearing); *see also* Iowa Code § 232.102(4)(a)(2) (permitting removal of the child from the parental home if "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance").

We begin by addressing the mother's challenge to the termination findings.

---

[3] Under section 232.116(1)(h), the court may terminate parental rights if it finds all of the following:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Just prior to K.L.'s birth, the mother had two positive drug screens. The mother claimed she had maintained sobriety but "someone" put methamphetamine "in her vape." At the dispositional hearing held on July 19, 2019, the DHS worker noted the mother was cooperative with services but tested positive for methamphetamine on June 3 and June 11. The child abuse assessment from June 2019 was founded against the mother because of the presence of illegal drugs in K.L., placing the child at "high risk of future abuse and neglect." From July through early November, the mother was cooperative with some services but was a "no show" for drug testing. She then tested positive with a drug sweat patch worn from November 4 to November 11. In late December, the mother and father were involved in a verbal altercation. In retaliation for the father's actions, the mother took a baseball bat to the father's car, causing considerable damage. The DHS reported the mother had not followed through with mental-health recommendations.

The mother's behavior showed improvement in early 2020, and three drug tests she submitted to in May were all negative for illegal substances. The DHS recommended a previously filed termination-of-parental-rights petition be dismissed because the mother demonstrated positive behavioral changes, tested negative for all substances, and maintained contact with service providers. After a June 18 permanency review hearing, the juvenile court agreed, and that petition was dismissed on July 8, 2020, but the CINA file remained open to monitor the family's progress and assure the safety of K.L.

Unfortunately, with the dismissal of the first termination petition, the mother's progress took a downturn. The mother claimed she continued to participate in offered services, but her drug tests from June 26 through September

24 were all "no shows" except for one test on September 1, which was positive for methamphetamine. She also reported being the victim of domestic violence by an unnamed paramour, and by the end of October she reported to the DHS that she "began buying, selling and using again." In the November 2 permanency review order, the juvenile court found the mother's "progress ceased and significant concerns have arisen regarding her ability to reunify with [K.L]. [The mother] has tested positive for methamphetamine and stopped communicating with providers."

The State filed another petition for termination of both parents' parental rights, and the matter came on for hearing on December 17. The juvenile court found the mother failed to address concerns regarding her substance-abuse and mental-health issues successfully and failed to "eliminate the chaos and instability from her life." As the DHS worker testified, the mother "was consistent for a period of time, and then she became inconsistent." The court noted the mother's long history of substance-abuse and mental-health issues. It took judicial notice of the case files of the five prior termination of the mother's parental rights, four of which resulted in termination orders filed on January 8, 2018, and the fifth resulted in a termination order filed on April 13, 2019. As we find in the record, the mother has demonstrated she is capable of complying with services and maintaining sobriety for a short period of time, but she soon reverts to substance abuse and continues to be plagued by unresolved mental-health issues. These issues make it untenable to return K.L. to her care. *See A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re A.H.*, 950 N.W.2d 27, 41 (Iowa Ct. App. 2020) (holding unresolved substance-abuse and mental-health issues place children at

risk of suffering adjudicatory harm). We agree with the juvenile court that the mother "has not been able to demonstrate that she is willing or capable of providing permanency and stability to [K.L.] or to maintain a safe, stable and appropriate home for him."

The juvenile court also found it is in K.L.'s best interests that the mother's parental rights be terminated and there is no impediment to termination. In making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). K.L. has been out of his mother's care since just days after his birth. With only short-lived progress by the mother, her visits remained fully supervised. We agree with the juvenile court that termination of the mother's rights is in K.L.'s best interests. Moreover, the mother did not carry her burden to establish any bond that may exist between herself and K.L. is strong enough to forestall termination under Iowa Code section 232.116(3)(c). *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

We next turn to the father's issues and also address the grounds he challenges under Iowa Code section 232.116(1)(h). The father was incarcerated when K.L was removed in April 2019. By the permanency hearing in November, he was discharged and on supervised probation. He was reincarcerated in early 2020, where he remained at the time of the termination hearing. His tentative discharge date is November 2023, but as the juvenile court found, he also has an outstanding detainer in the State of Missouri. Clearly, K.L. could not be given over to his father's care at the time of the termination hearing. When the juvenile court

considered an extension of time for the father to be able to have K.L. safely in his care, the court found, "There is nothing in the extended history of this case that allows the Court to conclude that there is a reasonable likelihood that real change will occur that will eliminate the need for removal even if a six month extension is granted." We agree. *See* Iowa Code § 232.104(2)(b) (authorizing a six-month extension of time if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). We also agree with the juvenile court's best-interests finding under Iowa Code section 232.116(2) at to the father. Given the father's inconsistent participation in services prior to his incarceration, as well as his history of and unresolved issues with substance abuse and mental health, termination of the father's parental rights is in K.L.'s best interests. While the father also asserts on appeal that he has "a deep and strong bond with the child" precluding termination under Iowa Code section 232.116(3)(c), his near total absence from the child's life belies this unproven assertion.

We therefore affirm the termination of both the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**