**IN THE COURT OF APPEALS OF IOWA**

No. 23-1552
Filed April 10, 2024

**IN THE INTEREST OF C.F., C.D., and N.H.,**
**Minor Children,**

**A.H., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, Judge.

A mother appeals a dispositional order denying modification of placement in a child-welfare case. **AFFIRMED.**

Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Jami J. Hagemeier of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

"Biological ties are not the only ties that are important." That's how the State summarized its argument for leaving six-year-old C.F., four-year-old C.D., and one-year-old N.H. in the care of Melesa, a woman the children view as their aunt.[1] Their mother, Alishia, asked the juvenile court to order placement of the children with their maternal grandmother rather than fictive kin. The juvenile court declined, and Alishia appeals. Like the juvenile court, we find disrupting the children's placement is not in their best interests. So we thus affirm the denial of the motion to modify.[2]

## I.      Facts and Prior Proceedings

The juvenile court adjudicated C.F., C.D., and N.H. as children in need of assistance (CINA) in March 2023. The court approved a request from the department to remove them from parental custody one month later. Alishia and N.H.'s father, Robert, had a history of substance use, and the department believed that Robert was physically abusing Alishia. The court found that domestic violence in the home posed a safety concern for the children. Alishia also had a no-contact order against Brandon, C.D.'s father. Joshua, who was identified as C.F.'s father in the CINA petition, also assaulted Alishia in C.F.'s presence, resulting in a

---

[1] Our record includes various spellings for the placement's name. But this is the spelling used in reports from the Iowa Department of Health and Human Services.
[2] We generally review child-welfare proceedings de novo. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). Under that standard, we assess the facts and the law; then "we adjudicate rights anew." *Id.* But when the issue requires statutory interpretation, we review for correction of legal error. *Id.* As always, our primary concern is the children's best interests. *Id.*

founded child abuse assessment in 2017. After removal, the department placed the children with Melesa, Joshua's sister.

In May 2023, the State notified the court that, although Joshua's name was on C.F.'s birth certificate, he is not the biological father. Instead, C.F.'s biological father was Edward, as confirmed by a 2018 paternity test. The State amended its CINA petition to name Edward as a party to the action.

Meanwhile, the children's guardian ad litem (GAL) met with the children at Melesa's home. The GAL's report referred to that placement as fictive kin and described Melesa's home as "the least restrictive environment" for the children. The case plan noted that Melesa was "meeting all of the children's needs and engaged in services recommended by the department." The GAL echoed that sentiment in her July 2023 report: "The children are thriving in their current placement and are very comfortable with their current caretakers."

By summer Alishia believed she was ready to resume custody. She moved to modify placement, noting her no-contact order with Robert, her work with a domestic-violence advocate, and her participation in substance-use treatment. In the alternative, Alishia asked the court to place the children with their maternal grandmother, Michelle.

At a dispositional hearing on the motion, Michelle testified to her close relationship with the children. She highlighted that she cared for the two older children in 2020; that placement lasted for nearly a year. She also cared for all three children for about a week in October 2022 when the department implemented a safety plan. But she acknowledged having "minimal contact" with the children when they returned to the care of Alishia and Robert. Michelle said she decided

to "step back" and let Alishia "live her life and if the kids need anything, I'm always there for them. I'm just a phone call away." And even after the department placed the children with Melesa, it still allowed Michelle to supervise visits with Alishia and provide transportation for the children.

Department case manager Callie Kueck offered a different perspective. She testified that it was in the children's best interests to stay in their current placement. Kueck told the court that C.F. had "a significant bond" with Melesa and "has reported to professionals that he feels safe with her." Kueck expressed less confidence about placing the children with Michelle: "There have been ongoing concerns regarding the interactions supervised by grandma, that there are people present that have not been approved by the department, there are also ongoing concerns of inappropriate conversations still occurring."

At the close of the hearing, Alishia's counsel described Joshua as C.F.'s "legal father" because his name is on the child's birth certificate. Yet counsel argued that Joshua's sister, Melesa, is not a relative placement because she is unrelated to C.D. or N.H. Counsel advocated to modify placement to their grandmother under Iowa Code section 232.102(1)(a) (2023), which prioritizes adult relatives over fictive kin. Both the State and GAL resisted. The State argued:

> [Y]ou can't ask a four-year-old or a baby, do you think this woman is your aunt, I mean, this is what I'm assuming [C.F.] calls [Melesa], that's his aunt. The children feel comfortable there. The children are doing well there. They are in placement with their siblings and moving them is going to be difficult for them.

The court denied Alishia's motion to modify placement in September 2023. It left "temporary legal custody with the department for purposes of foster care

placement with relative for [C.F.] and suitable others for [N.H.] and [C.D.]." Alishia appeals.[3]

## II. Analysis

In her petition on appeal, Alishia raises two telescoping issues. First, she claims the court erred in finding that Melesa was C.F.'s relative, as defined in Iowa Code section 232.2(56). Second, she argues that because Melesa was only fictive kin, as defined in section 232.2(22), the court erred in failing to order placement with the children's maternal grandmother under section 232.102(1)(a). That code section outlines the hierarchy for placement of children removed from their parents.

> After a dispositional hearing, the court may enter an order transferring the legal custody of the child to a parent of the child. If the court finds that custody with either of the child's parents is not in the child's best interests, the child's custody shall be transferred to the department for placement of the child in any of the following categories in the following order of priority:
> (1) An adult relative of the child including but not limited to adult siblings and parents of siblings.
> (2) A fictive kin.
> (3) Any other suitable placement identified by the child's relatives.
> (4) An individual licensed to provide foster care pursuant to chapter 237. If the child is placed with a licensed foster care provider, the department shall assign decision-making authority to the foster care provider for the purpose of applying the reasonable and prudent parent standard during the child's placement.
> (5) A group care facility, shelter care facility, or other residential treatment facility.

---

[3] The GAL filed a response to the petition on appeal, which the State joined. No other parties weighed in on the appeal. Attorneys for Joshua and Brandon resisted the motion to modify placement at the hearing. Counsel for Robert supported the motion, asserting that it was "very concerning" to him that N.H. was with "a stranger." Counsel for C.F.'s biological father, Edward, advised the court that his client no longer wished to be a party in the case.

Iowa Code § 232.102(1)(a). If the juvenile court identifies categories (2) through (5) as the preferred placement for a child, it must make a specific finding that placement with an adult relative is not in the child's best interests. *Id.* § 232.102(1)(c).

In response to Alishia's petition, the GAL contends there was clear and convincing evidence in the record to support the juvenile court's determination that Melesa was C.F.'s relative. As a back-up, the GAL urges that even if the court wrongly decided that C.F. was in a relative's care, the court did not err in refusing to disrupt the children's placement with fictive kin.

We start with the relative-versus-fictive-kin distinction.

> "Relative" means an individual related to a child within the fourth degree of consanguinity or affinity, by marriage, or through adoption. For purposes of subchapters III and IV [governing CINA and termination of parental rights], "relative" includes the parent of a sibling of the child if the sibling's parent's parental rights were not previously terminated in relation to the child.

*Id.* § 232.2(56).

As cross-referenced in that definition of relative,

> "Parent" means a biological or adoptive mother or father of a child; or a father whose paternity has been established by one of the methods enumerated in section 252A.3, subsection 10, or by operation of law due to the established father's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child.

*Id.* § 232.2(45). "'Fictive kin' means an adult person who is not a relative of a child but who has an emotionally positive significant relationship with the child or the child's family." *Id.* § 232.2(22).

Alishia maintains that the statutory definition of relative "does not encompass the current placement." Joshua is not C.F.'s biological father and was

not married to Alishia at the time of C.F.'s conception or birth.  From there, Alishia reasons that Melesa is not C.F.'s relative.  Alishia acknowledges that Joshua is named as the father on C.F.'s birth certificate.[4]  But, in her view, that fact does not mean that his sister is related to C.F. by blood, marriage, or adoption.  She insists that Melesa is "more appropriately defined as fictive kin."

In response, the GAL asserts that Joshua has generally been called C.F.'s father throughout the CINA case and, by extension, C.F.'s "Aunt Melesa" was an adult relative given notice of the removal under Iowa Code section 232.84.  The GAL also accuses Alishia of objecting to identifying Melesa as C.F.'s aunt to "manipulate" the language in section 232.102(1)(a) which gives relatives priority over fictive kin.  What the GAL does not do is address how Melesa fits the statutory definition of relative in section 232.2(56).  Perhaps because she does not.

That definition requires an individual to be related to the child within the fourth degree of consanguinity or affinity,[5] by marriage, or through adoption.  *Id.* § 232.2(56).  As Alishia asserts, Melesa did not meet any of those three criteria.  She is not a blood relative of C.F., nor is her spouse a blood relative of the child.

---

[4] The GAL argues that Alishia did not contest Joshua's status as C.F.'s legal father in the CINA proceedings, so has not preserved error on that issue for appeal.  At the hearing, that issue was raised by Joshua's attorney, who argued, "[I]f you're on the birth certificate, filed a paternity affidavit, then you're the father.  So that's what my client's done . . ."  And Alishia's counsel described Melesa as "the sister of the legal father."  But we do not read Alishia's petition on appeal as disputing Joshua's status as legal father.  Rather, she does not recognize his status as pulling his sister within the definition of relative.

[5] Our court has defined consanguinity as "kinship; blood relationship; the connection or relation of persons descended from the same stock or common ancestor."  *In re J.C.*, No. 03-0949, 2003 WL 22345729, at *4 (Iowa Ct. App. Oct. 15, 2003) (citing *Black's Law Dictionary* 375 (rev. 4th ed.1968)).  Affinity means "the relationship which one spouse has because of the marriage to blood relatives of the other."  *State v. Allen*, 304 N.W.2d 203, 207 (Iowa 1981).

She is not related to C.F. by marriage or adoption. Although Melesa was a blood relative of Joshua, who is arguably C.F.'s legal father, the statutory definition does not reach that relationship. We cannot expand the definition of relative to include the sister of a legal father if the text of the statute shows it was not the legislature's intent to do so. *See J.C.*, 857 N.W.2d at 502. We thus find the juvenile court erred in finding Melesa was C.F.'s relative.

But that finding is not the end of our analysis. It just puts C.F. in the same posture as his half siblings. On this record, we find Melesa was fictive kin to all three children. She was not their relative but had "an emotionally positive significant relationship" with them and their family. Iowa Code § 232.2(22). Even if she was not fictive kin but only an "other suitable placement identified by the child's relatives" under section 232.102(1)(a), our measure of the children's best interests would be no different. *See id.* § 232.102(1)(c).

Which brings us to the best interests of C.F., C.D. and N.H. In compliance with section 232.102(1)(c), the juvenile court made a specific finding that changing placement to the maternal grandmother's home was not in the children's best interests and provided reasons for its finding. The court acknowledged the grandmother's prior and ongoing involvement with the children and her willingness to have them again placed in her care. But the court observed that Alishia and her mother "have had a strained relationship" and highlighted the department's concerns about Michelle's inability to set appropriate boundaries with her daughter. The court also noted: "The department has raised concerns with the threat of violence by an adult brother who was reportedly present while the maternal grandmother was supervising the children." Beyond those concerns, the court

emphasized that "a disruption in placement" undermined the children's best interests because they were bonded to Melesa. Finally, the court addressed the sibling bond, finding that separating the children [is] not in their best interests.

In our de novo review of best interests, we reach the same conclusion as the juvenile court. In affirming the juvenile court's ruling, we do not disparage Michelle's commitment to her grandchildren. Nor do we underestimate the value of maintaining family ties for children who cannot be safely in their parents' custody. *See generally* Leonard Edwards, *Relative Placement: The Best Answer for Our Foster Care System*, 69 Juv. & Fam. Ct. J. 55, 58 (2018) (noting relative placement is now considered best practice and often minimizes trauma). But based on this record, we are persuaded by the GAL's compelling argument against disrupting the current placement:

> These three children have witnessed a lot of domestic violence, experienced their caretakers' extreme emotional dysregulation, been exposed to dangerous substances . . . , been subjected to inappropriate discipline, been neglected and have been coached to not to tell people what is happening in the family home. Separating these children would only cause unnecessary additional trauma.

Bottom line, it is not in these children's best interests to be moved to their grandmother's home for now. We affirm the juvenile court's denial of Alishia's motion to modify placement.

**AFFIRMED.**