**IN THE COURT OF APPEALS OF IOWA**

No. 17-0968
Filed September 13, 2017

**IN THE INTEREST OF M.L.,**
**Minor Child,**

**E.B., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Michael A. Woods of Zamora, Taylor, Woods & Frederick, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Timothy J. Tupper of Tupper Law Firm, Davenport, guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.  Tabor, J., takes no part.

**VOGEL, Presiding Judge.**

The biological father of M.L., who was born 2013, appeals the termination of his parental rights.[1]

**BACKGROUND FACTS.**

The father, a longtime friend of M.L.'s biological mother, agreed to have sexual relations with her with the hopes of producing a child, which the mother and the mother's wife could raise as their own. M.L. was conceived and born after the mother and the wife were legally married.[2] The father maintained a friendship with the mother and even lived with the mother and her wife for a short time after M.L.'s birth. Beyond that, the father was largely absent from M.L.'s life, providing only minimal support either financially or emotionally. The father claims he intentionally stayed out of M.L.'s life out of respect for the marriage of the mother and her wife, and to allow them to raise M.L. as their daughter, with full parenting rights and without interference by him, the biological father.[3] He also

---

[1] The biological mother has been incarcerated since early 2016. Her parental rights were not terminated; she did not support the termination of the father's parental rights.

[2] The mother's and the wife's names appear on M.L.'s birth certificate as M.L.'s two parents. *See* Iowa Code § 144.13(2) (2017) (providing that "[i]f the mother was married at the time of conception, birth, or at any time during the period between conception and birth, the name of the husband shall be entered on the certificate as the father of the child unless paternity has been determined otherwise by a court of competent jurisdiction, in which case the name of the father as determined by the court shall be entered by the department."). *But see Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 340–41 (Iowa 2013) (providing Iowa Code section 144.13(2) violated the equal protection clause of the Iowa Constitution and requiring the Iowa Department of Public Health to list the nonbirthing spouse in a lesbian marriage on the child's birth certificate).

[3] During the child-in-need-of-assistance (CINA) proceeding, the father took a paternity test to confirm his paternity; however, he did not file a paternity affidavit. *See* Iowa Code § 252A.3A(2)(b) (providing that if the paternity of a child is not legally established, then it can be established by affidavit for children who are born to "a woman who is married at the time of conception, birth, or at any time during the period between conception and birth of the child if a court of competent jurisdiction has determined that the individual to whom the mother was married at that time is not the father of the child").

claims there was considerable stress between the wife and him, making any attempted contact with M.L. even more difficult.

M.L. came to the attention of the Iowa Department of Human Services (DHS) in October 2015 when there were concerns the mother was using illegal substances, including heroin, while caring for M.L. Although there is nothing in the record that would indicate the wife was also using controlled substances, the child was removed and placed with her maternal grandmother.[4] At that time, and for most of the time since then, the father has been incarcerated. With little effort by the father to respond to the DHS's efforts to include him in these proceedings, the State sought to terminate his parental rights.[5]

---

[4] The maternal grandmother was allowed to intervene in the CINA proceeding. After the permanency review hearing held in February 2017, the child was removed from the grandmother's care and placed with the wife where she remained at the time of the termination hearing. The grandmother appealed that decision, but our supreme court denied her appeal as interlocutory because the permanency order also contained a directive for the State to file a petition to terminate the rights of the father.

[5] Despite not being listed as a parent on M.L.'s birth certificate or establishing paternity by affidavit as provided in section 252A.3A(2)(b), the father was a party to the termination proceeding in light of Iowa Code section 232.112, which provides: "Persons listed in section 232.111, subsection 4, shall be necessary parties to a termination of parent-child relationship proceeding and are entitled to receive notice and an opportunity to be heard . . . ." Those persons in section 232.111(4)(b) include: "(1) living parents of the child." A "parent" is defined under Iowa Code section 232.2(39) as:

> a biological or adoptive mother or father of a child; or a father whose paternity has been established by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law.

See also In re J.C., 857 N.W.2d 495, 505 (Iowa 2014) (noting the man who was married to the biological mother at the time of the child's birth, but who was not the child's biological nor adoptive father, was not a necessary party to the termination proceedings and was properly dismissed once it was determined he was not the child's biological father).

**SCOPE OF REVIEW.**

Our review of termination proceedings is de novo. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

**GROUNDS FOR TERMINATION.**

The father's parental rights were terminated under Iowa Code section 232.116(1)(b), (d), (e) and (h). He appeals asserting a lack of clear and convincing grounds only under paragraph (b) and (e). With no challenge to paragraph (d), we affirm the termination on those grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

**BEST INTERESTS.**

The father next claims it is not in M.L.'s best interests that his rights be terminated. *See* Iowa Code § 232.116(2). His primary argument is that, after he is released from prison, he should be given additional time to establish a relationship with his daughter.

As noted above, the father was incarcerated—actually beginning in February 2015—and remained so when the DHS first became involved with the family in October 2015. He was released on June 27, 2016. In the fall of 2016, the DHS contacted the father's parole officer to make sure he was aware of the DHS's involvement. He attended a review hearing on October 26, 2016. After the hearing, the DHS encouraged him to start participating in offered services. The father failed to follow up on the offer, and the DHS learned the father returned to prison on December 9, 2016. On March 3, 2017, the father contacted

the DHS through a prison parent partner to see what services he could engage in. The DHS learned that the father was released from prison on April 13, but he was again incarcerated on April 29 on an assault charge.

The father now claims that his incarceration has prevented him from being in a position to reunite with M.L. and that he had participated in various programs within the prison system. However, he cannot use his incarceration as a justification for the lack of a relationship with M.L. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). In addition, when requested to provide verification that he had participated in various programs while incarcerated, the father failed to respond to the request.

Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." The record confirms that the father, while occasionally expressing an interest in participating in services or being involved in M.L.'s life, has wholly failed to carry out any of his expressed intentions. The district court found:

> This child has waited for 3 years for this biological father to decide that he wanted to revoke his agreement to allow the married couple to be the parents. . . .
>    . . . .
>    . . . [The mother and her wife] are still married, and [the wife] is providing exceptional care for the child, and the child is well bonded to her. The biological father has yet to even start to establish a relationship with the child and is currently unavailable to do so.

The court then found it was in M.L.'s best interest to terminate the father's parental rights and there were no impediments to do so. *See* Iowa Code § 232.116(2), (3). The record is bare as to any basis to grant the father an

additional six months to work to "establish a relationship" with M.L. *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011) ("We will not gamble with a child's future by asking him to continuously wait for a stable biological parent, particularly at such a tender age."). We agree with the district court, it is in the best interests of M.L. that the father's parental rights be terminated, and there are no impediments to termination.

We therefore affirm the termination of the father's parental rights.

**AFFIRMED.**