**IN THE COURT OF APPEALS OF IOWA**

No. 21-0202
Filed April 28, 2021

**IN THE INTEREST OF N.M.,**
**Minor Child,**

**N.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her one-year-old daughter. **AFFIRMED.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Tammy L. Banning of the Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A mother, Nichole, appeals the juvenile court order ending her legal relationship with one-year-old N.M. She argues the State did not offer clear and convincing evidence to support termination of her parental rights. In the alternative, Nichole asks to defer permanency for six months. She also contends the juvenile court should have denied the State's petition to terminate because she and N.M. share a close bond.

We find ample evidence to support the court's termination ruling under Iowa Code section 232.116(1)(g) (2020).[1] Nichole lost custody of three other children before N.M. was born. That history is "highly relevant" when we assess Nichole's ability or willingness to respond to services. *See In re J.H.*, 952 N.W.2d 157, 167 (Iowa 2020). And that same evidence weighs against delaying permanency. Finally, without doubting Nichole's affection for N.M., we do not find the closeness of their relationship compels a different result. *See* Iowa Code § 232.116(3)(c).

## I. Facts and Prior Proceedings

The juvenile court terminated Nichole's parental rights to three other children in 2009, 2013, and 2015. Five years later, in March 2020, Nichole gave birth to N.M. At the hospital, Nichole tested positive for methamphetamine and THC, the active ingredient in marijuana. Nichole—who has an intellectual disability—struggled with basic infant care and feeding. Considering the prior

---

[1] We review termination decisions de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We are not bound by the juvenile court's factual findings. *Id.* But we accord them deference, especially in assessing witness credibility. *Id.* We are most concerned with N.M.'s best interests. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

terminations, Nichole's drug use, and her inability to grasp fundamental parenting concepts, the Iowa Department of Human Services (DHS) sought to remove N.M. from Nichole's care. The juvenile court approved removal.[2] Nichole could not identify appropriate family members to help care for her infant daughter. So N.M. has remained in foster care since she was three days old.

In the months following N.M.'s removal, Nichole made little progress in becoming a reliable parent. She did not improve her parenting skills. She was inconsistent in her visitations with N.M., attending only half the sessions offered. She obtained substance-abuse evaluations but did nothing else to address her ongoing drug use. She testified she was not sure why she did not follow through with treatment. Similarly, she completed a mental-health evaluation but did not follow through with the recommended counseling or medication services. Nichole's physical health was also an issue. She told the DHS that she had seizures and "if she were to get the child back in her care she would need somebody to be with her twenty-four hours a day in case she had a seizure so that they could catch her if she was holding [N.M.]"

Along with her mental- and physical-health concerns, a stable home has been elusive for Nichole. She moved at least a dozen times during the CINA case. Even by the day of the termination hearing, she was still looking for her own apartment. Without independent living, she acknowledged staying with acquaintances who used illicit drugs.

---

[2] The court adjudicated N.M. as a child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) and (n) in June 2020.

Faced with this lack of progress, the State petitioned to terminate Nichole's parental rights, relying on Iowa Code section 232.116(1), paragraphs (e), (g), (h) and (*l*). After a hearing, the juvenile court granted the petition on those grounds. Nichole appeals.[3]

## II. Analysis

## A. Ground for Termination

The State must prove the allegations in its petition by clear and convincing evidence. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). That level of proof means we harbor no serious or substantial doubts that the juvenile court drew correct conclusions of law from the evidence presented. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

When the juvenile court terminates on more than one statutory ground, we may affirm the order on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We opt to affirm on paragraph (g) of section 232.116(1). Paragraph (g) is "unique" among the grounds for termination under section 232.116(1) because it focuses more on the parent's past. *J.H.*, 952 N.W.2d at 166–67. For this statutory ground, the State must prove these elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

---

[3] The order also terminated the legal relationship of any putative fathers. None are parties to this appeal.

> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).

Nichole does not contest the first two elements. Rather, she contends the State did not offer clear and convincing proof that she could not respond to services with more time. Contrary to her contention, the record supports elements three and four. The DHS has offered her services on and off for more than a decade and through four different CINA cases. Yet her inability or unwillingness to respond to those services persisted. Nichole secured evaluations for her substance-abuse and mental-health challenges but did not pursue treatment. She did not progress beyond fully-supervised visits because the social workers lacked confidence in her ability to care for N.M. on her own.

These challenges were not new; they also contributed to the termination of Nichole's parental rights to three other children. *See J.H.*, 952 N.W.2d at 168. While the prior terminations do not alone dictate the future, they cast a long shadow. All things considered, Nichole continued to lack the ability or willingness to respond to services and remained unable to safely care for N.M. *See id.*

### B. Delayed Permanency

At trial, Nichole asked for an "extension of six months so that I can prove to them that I can do it and potentially have her come back home with me." She echoes that refrain on appeal, asserting "there is a reasonable likelihood the child could be returned to [her] care . . . within the deferral period of time."

Like the juvenile court, we decline Nichole's request to defer permanency. To grant an extension, we must decide "that the need for removal of the child from

the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). This record does not support an extension. In fact, just the opposite. As the juvenile court noted, Nichole (1) was recently arrested for a drug-related offense; (2) did not follow through with drug testing; (3) admitted using illegal substances as recently as October 2020; (4) did not engage in substance-abuse programming; and (5) did not demonstrate an ability to maintain a stable home. The court also gave "considerable weight" to the State's exhibits from the earlier termination cases, which reflected "the same concerns [that] still exist today." Thus, we agree deferring permanency is not the right course.

## C. Closeness of Relationship

Nichole also urges that the court should have declined to terminate based on her bond with N.M. *See* Iowa Code § 232.116(3)(c). Section 232.116(3)(c) allows a juvenile court to deny a petition to terminate if the parent presents "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.*; *see A.S.*, 906 N.W.2d at 476–77 (holding parent resisting termination bears burden to establish exception under section 232.116(3)).

Again, the record contradicts Nichole's position. True, the social worker testified that "without question" Nichole loves her child and dotes on her during their visits. But the worker did not detect that N.M. had developed a strong bond with her mother. Having spent her entire life with foster parents, N.M. did not turn to Nichole for comfort and nurturing. Nichole did not prove termination would harm N.M. because of the closeness of their relationship. *See D.W.*, 791 N.W.2d at 709.

**AFFIRMED.**