# IN THE COURT OF APPEALS OF IOWA

No. 21-0701
Filed September 22, 2021

**IN THE INTEREST OF R.B.,**
**Minor Child,**

**R.B., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


    A father appeals the termination of his parental rights to his two-year-old

daughter.  **AFFIRMED.**


    Adam Hanson of Law Office of Adam Hanson, Des Moines, for appellant

father.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

    Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor child.


    Considered by Tabor, P.J., and Greer, and Badding, JJ.

**TABOR, Presiding Judge.**

R.B. was just two weeks shy of her second birthday when the juvenile court held a termination-of-parental-rights hearing. She had been out of her parents' care for twenty months. In its termination order, the court acknowledged that her father, Rodney, had taken "some important steps toward maintaining his sobriety." But the court cited his recent methamphetamine relapse and suicide attempt as proof that he faltered in "maintain[ing] those gains in the way that it would be necessary to be the custodian of a toddler like [R.B.]." Rodney appeals that order. He contends he could resume care of R.B. and termination did not serve her best interests. After reviewing the record, we reach the same conclusions as the juvenile court. So we affirm the termination order.[1]

### I. Facts and Prior Proceedings

R.B. was born in April 2019. But her parents struggled with their addictions to methamphetamine. So the district court adjudicated three-month-old R.B. as a child in need of assistance (CINA) and removed her from her home.[2] That summer, the parents failed to participate in services to address their substance-abuse issues. But by January 2020, they started showing progress. For example, Rodney completed inpatient treatment. Hoping to capitalize on those gains, the court issued a six-month extension of permanency.

---

[1] The juvenile court also terminated the rights of R.B.'s mother, who does not appeal. Our review of Rodney's appeal is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We are not bound by the juvenile court's factual findings. *Id.* But we give them deference, especially in assessing witness credibility. *Id.* We are most concerned with R.B's best interests. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

[2] R.B. started out in the care of her paternal grandmother, but in April 2020 moved in with her maternal grandmother.

But Rodney stumbled on his path to sobriety. In late April 2020, he tested positive for methamphetamine. Still, the court saw "glimmers of hope" over the summer. Rodney had been honest about his relapse and reengaged in treatment. And he was visiting R.B. at least five days a week. By early November, Rodney's progress prompted the court to adopt a new permanency plan: return custody of R.B. to her father in ninety days.[3]

That plan never came to fruition. Rodney again relapsed on methamphetamine shortly after the November permanency review hearing. In December he was hospitalized after a suicide attempt. The juvenile court described his next missteps: "Instead of doubling down on substance abuse support during the late fall and early winter, he missed a lot of appointments." After restarting his individual appointments in early January 2021, he failed to provide a drug screen as requested. The DHS asked for a drug patch, which came back negative. But he was still sporadic in providing drug screens and attending treatment counseling appointments.

Seeing Rodney's stalled progress, the State refiled its petition to terminate his parental rights, citing Iowa Code section 232.116(1), paragraphs (h) and (*l*) (2021).[4] After an April 2021 hearing, the court found insufficient clinical evidence

---

[3] The parties agreed to dismiss a pending termination petition.
[4] Section 232.116(1)(h) requires proof that: (1) the child is three years old or younger; (2) the child has been adjudicated as a CINA; (3) the child has been removed from the parent's care for at least six of the last twelve months, or for the last six consecutive months with any trial period at home being less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time.

Section 232.116(1)(*l*) requires proof that (1) the child has been adjudicated a CINA under section 232.96 and custody has been transferred from the parents for placement under section 232.102; (2) the parent has a severe substance-

to support termination under paragraph (*l*), but granted the petition under paragraph (h). The court noted that Rodney had "almost two years to address the substance abuse and mental health issues that led to removal." Yet R.B. could not be safely returned to his care right now. The court also found termination was in R.B.'s best interests as Rodney had not shown his willingness or ability to be a consistent caregiver for his daughter. Rodney contests those findings on appeal.

## II.    Legal Analysis

### A.    Statutory Ground

Rodney asserts his hard work in addressing his addiction "placed him on the threshold of reunification until those plans were halted by a one-time relapse in November." In this vein, he highlights what he sees as an inconsistency between the court's reliance on his methamphetamine use as the reason for finding R.B. could not be returned home and the court's finding of insufficient evidence that he had severe substance-abuse disorder that justified termination. Rodney argues: "As the two issues are inexorably linked, and absent some reason other than substance use why the child cannot be returned, the same finding of a lack of clear and convincing evidence should apply to both grounds." We disagree with that logic.

For starters, the court was clear about why the State did not meet its burden under paragraph (*l*). The order explained: "While there is no doubt that the parents'

---

related disorder and presents a danger to self or others as evidenced by prior acts; (3) there is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

substance abuse issues are long term and chronic from a lay point of view, the most recent clinical evidence in this case does not support termination under this ground." The court was right. Paragraph (*l*) requires consideration of diagnostic criteria. *In re L.H.*, 949 N.W.2d 268, 271 (Iowa Ct. App. 2020). It is not sufficient for the court "to assess in lay terms whether the parent suffers from 'a severe, chronic substance problem.'" *In re G.B.*, No. 14-1516, 2014 WL 6682456, at *3 (Iowa Ct. App. Nov. 26, 2014) (citations omitted in original). By contrast, paragraph (h) does not have that technical element. So a long history of substance abuse and repeated relapses may support the court's conclusion that a child cannot be returned to a parent's care. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) (upholding termination on similar grounds under section 232.116(1)(f)).

It's true that Rodney stood on the threshold of reunification. But he never crossed it. He relapsed soon after the permanency hearing. He described the triggering event as "wrong place, wrong time" because he ran into someone he knew at a gas station. Rodney's inability to manage that kind of trigger suggests he still has work to do in his fight against addiction.

On top of his relapse, Rodney revealed instability in his mental health in December 2020. To make matters worse, he was inconsistent in providing drug screens and attending appointments in early 2021. On this overall record, we find clear and convincing evidence that toddler R.B. could not be safely returned to Rodney's custody at the present time. *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (defining "present time" as time of termination hearing).

**B.      Best Interests**

We next consider whether termination was in R.B.'s best interests.  *See In re A.S.*, 906 N.W.2d at 473 (describing second step in termination analysis as deciding "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights").  Under that framework we give primary consideration to the child's safety, to the best placement for furthering the child's long-term nurturing and growth, and to her physical, mental, and emotional condition and needs.  Iowa Code § 232.116(2).

Rodney argues termination was not in R.B.'s best interest because of their strong relationship.  True, the Family Centered Services reports reflect that Rodney nurtured a healthy bond during his consistent visits with his daughter.  On that evidence, it may well be in her immediate interests to maintain a bond.  But we must also consider R.B.'s long-range needs.  To best divine what the future holds for R.B. if returned to Rodney's care, we can't ignore his past performance.  *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020).  His inability to sustain progress toward being a substance-free and safe parent signals that termination was in R.B.'s best interests.[5]

**AFFIRMED.**

---

[5] Rodney also worries that termination will cut ties between R.B. and her paternal grandmother—who provided her care during the early months of the CINA case. But, the record shows the two grandmothers communicate and the maternal grandmother hosts visits between R.B. and the paternal grandmother.  We have no reason to believe that termination will end that practice.