# IN THE COURT OF APPEALS OF IOWA

No. 21-1369
Filed November 23, 2021

**IN THE INTEREST OF J.T.,**
**Minor Child,**

**M.W., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Erin Romar, Des Moines, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., Schumacher, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VOGEL, Senior Judge.**

The mother of J.T., born September 2020, appeals the termination of her parental rights.[1]  When J.T. was just one day old, she was removed from her mother's care under an ex parte removal order.  One week later, after a removal hearing, the juvenile court found:

> The child's life or health would be in imminent danger if returned to the custody of a parent because: [the mother] has been involved with [the Iowa Department of Human Services] as a parent since 2015.  Her parental rights were terminated to two children in two separate actions in 2017 and to another child in May, 2019.  The reasons for prior court involvement have been [the mother's] mental health, parenting capacity and skills, and association with dangerous individuals . . . placing her infant children at risk.  Lack of participation in visits, stable housing, and lack of participation in mental health services have also been factors.  [The mother] currently has an open [child-in-need-of-assistance] case with another child.  In that matter she has not progress[ed] past supervised visits.

Numerous services were offered to the mother, as well as the services already in place from the ongoing juvenile case involving one of the mother's other children.  On November 6, 2020, the juvenile court adjudicated J.T. a child in need of assistance after finding the mother's mental health had not improved to the extent that she could safely parent J.T.  After a review hearing on June 28, 2021, the court found:

> Placement outside the parental home is necessary because a return to the home would be contrary to the child's welfare due to [the mother's] unresolved mental health issues which lead to instability and association with dangerous individuals and interfere with consistent and safe parenting.  [The mother] has not been consistently attending visits with [J.T.] or attending her routine medical appointments. . . .  There is a pattern of [the mother] associating with chaos and many different individuals she does not

---

[1] The parental rights of two named men "and any unknown putative fathers" were also terminated.  None appeal.

seem to know well.  [The mother] has not gained the skills to discern safe from unsafe people.

With little to no progress in the mother's ability to safely care for J.T., the State filed a petition to terminate the mother's parental rights on June 29, 2021. The matter came on for hearing on August 17, and on September 13 the juvenile court ordered the termination of the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2021).  The mother appeals.

"We review termination of parental rights proceedings de novo."  *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020).  "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility."  *Id.*  "'[O]ur fundamental concern' on review 'is the child's best interests.'"  *Id.* (alteration in original) (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014)).  We employ a three-step statutory framework analysis on our de novo review of termination-of-parental-rights cases.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

"The first step in our analysis is to determine if a ground for termination exists under section 232.116(1)."  *Id.*  The mother asserts the State failed to prove her parental rights should be terminated under both Iowa Code section 232.116(1)(g) and (h).  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We choose to review the mother's assertion as to the proof under section 232.116(1)(h), which provides the court may terminate parental rights if it finds all of the following:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the findings as to the fourth element, asserting there was a lack of evidence presented that J.T. "would be subject to adjudicatory harm" under Iowa Code section 232.2(6)(c)(2)[2] if she were returned to the mother. The mother participated in a psychological evaluation on March 3, 2021, after which the clinical psychologist concluded the mother "meets the diagnostic criteria for Borderline Intellectual Functioning." On June 25, the mother's therapist noted that the mother "continues to engage and participate in individual therapy services"; however:

> [The mother] has and continues to struggle with keeping appointments. I determined that telehealth session might be the most appropriate form of therapy for her. [The mother's] response and interactions with this writer continue to be optimistic during the sessions. However, she struggles in almost all aspects of her life that include but are not limited to her family, significant other, employment, housing, along with her long and extensive involvement with the Department of Human Services and removal of her children from her care. As I continue to process with [the mother] she continues to have some insight into her situation. Still, she cannot follow through with the skills and behaviors learned during previous sessions. It appears [the mother] continues to have crisis after crisis within her life that are concerning.

---

[2] Iowa Code section 232.2(6)(c)(2) provides a child is in need of assistance if the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child."

The Iowa Department of Human Services (DHS) provided numerous services to the mother, including the offer of four visits with J.T. each week. And while the mother showed "positive parenting and interaction skills" during the visits, her lack of regular attendance at the prearranged visits became problematic. The DHS worker, after reviewing all the services offered to the mother, concluded that the mother had "not been able to make enough progress in mental health treatment in terms of stability in her relationships and unsafe situation with others" and recommended her parental rights be terminated. The same DHS worker testified at the termination hearing, standing by the comments and recommendations in her report. We conclude on our de novo review of all the evidence, the State proved by clear and convincing evidence the elements under Iowa Code section 232.1161(1)(h).

Next, the mother asserts the State failed to prove it was in J.T.'s best interests to have the mother's rights terminated. As the State points out, the mother conflates Iowa Code section 232.116(2) and (3), by asserting the mother's claimed "bond" with J.T. should preclude termination because it is not in J.T.'s best interests. In doing so, the mother does conflate the second and third steps of our framework. *See P.L.*, 778 N.W.2d at 40–41. Regardless, it is clear that J.T. needs a stable home, free from the many challenges the mother continues to encounter in her life. The record includes the early reports of the mother's life shortly after J.T. was born, as well as ongoing reports as to the mother's lack of progress in establishing a safe and stable environment for J.T. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a permanent home are the "defining elements" in

determining a child's best interests).  The juvenile court concluded the mother was not able to provide J.T. with the stability she deserves and also that none of the permissive factors under section 232.116(3) would preclude termination.  We agree and affirm.

**AFFIRMED.**