# IN THE COURT OF APPEALS OF IOWA

No. 23-1164
Filed September 27, 2023

**IN THE INTEREST OF M.H., S.H., and H.H.,**
**Minor Children,**

**K.H., Mother,**
    Appellant,

**C.F., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Union County, Monty W. Franklin, District Associate Judge.

The mother appeals the termination of parental rights to her three children; the father appeals the termination of parental rights to his child. **AFFIRMED ON BOTH APPEALS.**

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

Chira L. Corwin of Corwin Law Firm, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Adam D. Hanson, Winterset, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

This appeal concerns three minor children: S.H. (born in 2011), M.H. (born in 2017), and H.H. (born in 2020). The parents separately appeal termination of their parental rights—the mother as to all three children and the father only as to H.H.[1] The mother asserts that the State failed to prove the grounds for termination under Iowa Code section 232.116(1)(d) and (*l*) (2023), termination is not in the best interests of the children, the juvenile court should have granted a six-month extension to work toward reunification, and, alternatively, the juvenile court should have ordered a guardianship. The father makes the same four arguments as the mother as it relates to H.H. On our review, we affirm the decision of the juvenile court terminating the mother's rights to all three children and the father's rights to H.H.

**I. Background Facts and Prior Proceedings.**

In May 2021, the children came to the attention of the Iowa Department of Health and Human Services (department) because the mother failed to bring H.H. to multiple medical appointments. At the time, H.H. had a feeding tube and had lost significant weight. In the same month, the mother was jailed on criminal charges[2] and declined to assist with attempts by the department to locate H.H. while the mother was in jail. At this point, the mother and H.H. resided together in

---

[1] Only H.H. is the biological child of C.F., the father who appeals. S.H. and M.H. have a different biological father; his rights were terminated by the juvenile court in July 2023 under Iowa Code section 232.116(1)(d), (f), and (*l*). He does not appeal. When we use the term "father" in this decision, we are referring to C.F.
[2] The charges were for possession of drug paraphernalia, possession of a controlled substance (marijuana), possession of a controlled substance (methamphetamine), and interference with official acts.

a motel but the older two children were living with their maternal grandparents since at least 2019 by mutual agreement with the mother.[3]  Although the two older children already were not living with the mother, the juvenile court removed all three children from her custody and formally placed all three with their grandparents.  H.H. was eight months old at that time; S.H. was nine, and M.H. was four years old.  In June 2021, S.H., M.H., and H.H. were each adjudicated a child in need of assistance (CINA).

During this time of the department's initial involvement, the father was in prison.  H.H. was never in his care.  The father was paroled to his mother's home in August 2022.  As part of his supervised parole, he was required to submit to drug testing, and he returned two drug tests with positive results for methamphetamine, including one in January 2023.  He also missed several required drug tests.  In March 2023, the department requested that the father submit to a drug test, but the father did not do so.  He submitted a clean urine analysis later that month.  The department did not recommend that the father participate in mental-health counseling.

At dispositional hearings in July 2021, October 2021, January 2022, and May as well as permanency hearings in September and January 2023, the children remained CINAs and placed with their grandparents.  After testing positive for

---

[3] The record is unclear on whether the grandparents are married or not, although there is no dispute that the grandfather is the mother's father.  Some documents refer to them as the children's grandfather and his wife; others refer to them as the children's grandparents; still others describe them as the children's grandfather and his paramour.  At the termination hearing, the department social worker thought that maybe the grandparents were married.  The mother testified that they were not.  Because this distinction does not make a difference for our analysis, we refer to them as the grandparents.

methamphetamine, the mother was required to obtain a substance-abuse evaluation and follow any recommended treatment plan. The mother obtained the evaluation, but she was inconsistent in following the treatment plan, missing more appointments than she attended. Her last drug test, in February 2023, was positive for methamphetamine. The mother did not participate further in the recommended treatment plan. The mother did, however, provide documentation of attending mental-health treatment, but other than documentation of her attendance, she did not offer evaluation, status, or progress reports. And at the time of the termination hearing there was no confirmation she was still in individual mental-health therapy.

In January 2023, the State petitioned for termination of both the mother's and father's parental rights to H.H. In March, the State also petitioned for termination of the mother's parental rights to S.H. and M.H. The juvenile court held a termination hearing as to all three children in April. At the hearing, a social worker for the department testified that the mother lied about her housing, relationship status, and drug testing. The mother forged a doctor's note verifying that she was allergic to the drug testing patch and submitted it to the juvenile court. On top of that, the social worker had concerns that there was drug use at the mother's current home. As to the father, the social worker also testified that the father lied about attending drug tests and that he had relapsed. She said, however, that she did not have any concerns about the father's mental health. At the time of the termination hearing, the grandparents had completed all of the trainings required to adopt the children. Also at the termination hearing, the mother admitted that she did not feel ready to have her children back and needed a little bit more time. Counsel for the mother conceded that the statutory grounds for termination under

Iowa Code section 232.116(1)(f) as to S.H. and M.H. and 232.116(1)(h) as to H.H. had been met. The father did not testify at the termination hearing.

In its July 2023 termination order regarding H.H., the juvenile court cited concerns with substance abuse and mental health from the mother and substance abuse from the father that made neither one an appropriate or safe parent for H.H. The juvenile court also noted a lack of stability from both parents as neither one had continuous or reliable employment and neither had contributed financially to the children's care; the mother was living with a friend and had not signed a written lease. In addition, the juvenile court found that neither the permissive exception nor the possibility of an additional six months to work toward reunification prevented it from terminating the parents' rights. The juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(d), (h), and (*l*) regarding H.H. The juvenile court terminated the mother's rights to S.H. and M.H. under Iowa Code section 232.116(1)(d), (f), and (*l*), noting the same concerns with substance abuse, mental health, and stability as well as lack of continuous and reliable employment. The mother now appeals regarding S.H. and M.H., and both parents now appeal regarding H.H.

## II. Standard of Review.

We review a termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "[O]ur fundamental concern" in review of termination proceedings "is the child's best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

**III. Discussion.**

Both parents raise multiple grounds on appeal. We address each of these in turn, beginning with the grounds that the juvenile court relied on for termination. We address the appeal of each parent separately and look to the mother's first. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) ("[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." (alteration in original) (citation omitted)).

**A. Mother's Appeal.**

*i. Grounds for Termination.* The juvenile court relied on three separate grounds to terminate the parental rights of the mother to each child: Iowa Code section 232.116(1)(d), (h), and (*l*) for H.H. and 232.116(1)(d), (f), and (*l*) for M.H. and S.H. When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). At the termination hearing, counsel for the mother conceded that the statutory grounds for termination under Iowa Code section 232.116(1)(f) as to S.H. and M.H. and 232.116(1)(h) as to H.H. have been met. And the mother does not challenge this

ruling on appeal, so she waives any alleged error. *In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (providing the parent's failure to challenge termination under one of the grounds "waives any error as it relates to that ground for termination, and we may affirm on that ground without further analysis"). Therefore, based on this waiver, the requirements for termination under (f) and (h) are met.

*ii. Best Interests of the Child.* In making a best-interests-of-the-child determination, courts "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests.").

Here, the best placement for furthering the long-term interests of all three children is not in the custody of the mother due to her ongoing drug use, inability to demonstrate reliable and continuous sobriety, and lack of honesty about her efforts toward sobriety and stable mental health. She has not consistently returned negative drug screens and has missed multiple appointments for drug testing. After the positive test in February 2023, the mother never sought any substance-abuse treatment. There are concerns that she is involved with ongoing drug use, and the department social worker believed that there was drug use at her current residence. Not only did the mother fail to comply with requests for drug tests, but she also forged documentation to relieve herself of the obligation to test and submitted it to the juvenile court. In addition, she lied about her sobriety and drug

use and offered incomplete documentation of her mental-health treatment. Lacking stable housing, she also does not have continuous or reliable employment and has not contributed financially to the children's care

More importantly, all three children need a permanent home and have been removed from the mother's care since May 2021. For H.H., only the first eight months of her life were spent in the custody of the mother. For S.H. and M.H., they have been removed from the mother's care for the last four years, beginning in 2019 when the mother voluntarily entrusted their care to the grandparents. Their best interests require termination.

*iii. Six-Month Extension.* To grant an additional six months for the mother to work toward reunification, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We will not ask a child to wait longer for permanency on a mere hope of a parent's improvement. *See In re J.S.-M.*, No. 21-0927, 2021 WL 4304213, at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming the juvenile court's refusal "to delay permanency 'on the mere hope' that the father would soon learn to become a self-sufficient parent"); *see also In re B.A.*, No. 11-1507, 2011 WL 5868301, at *2 (Iowa Ct. App. Nov. 23, 2011) (affirming termination when the father's "progress was not sufficient to show more than a mere hope that he might eventually be able to parent the child safely and consistently").

Instead we consider, based on a parent's past behavior, the likelihood that the statutory requirements for additional time will be met. *See J.E.*, 723 N.W.2d at

798 ("[W]e look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." (citation omitted)); *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency. Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citations omitted)); *see also P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

For neither H.H., S.H., nor M.H. are there specific, enumerated factors for the mother that demonstrate that the safety and permanency concerns will no longer exist in six months. Rather, her inconsistent steps towards improvement make a six-month extension unwarranted here. Most concerning is the mother's refusal to comply with required drug testing and be honest in her treatment, coupled with the department's concern that she is involved with ongoing drug activity in her home. Although the mother made some steps toward addressing her substance-abuse concerns and has done the same for mental-health concerns, she has not demonstrated that she will continue to do so consistently. And she certainly has not demonstrated that the issues will be resolved at the end of six more months, especially considering that the children have been removed from her custody for over two years while she made inconsistent progress. Therefore, we, like the juvenile court, decline to grant a six-month extension.

*iv. Guardianship.* The mother also requested that the juvenile court establish a guardianship as an alternative to termination at the termination hearing. Despite the wishes of a parent, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 472 (citation omitted). Furthermore, when the statutory requirements for termination are met, we may order either termination or a guardianship. *See, e.g.*, *In re N.M.*, No. 17-0054, 2017 WL 1088119, at *3 (Iowa Ct. App. Mar. 22, 2017); *In re S.C.*, No. 15-1912, 2016 WL 903029, at *4 (Iowa Ct. App. Mar. 9, 2016); *In re K.B.*, No. 15-1685, 2016 WL 146707, *4 (Iowa Ct. App. Jan. 13, 2016). At the same time, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). We agree with the juvenile court that a guardianship status lacks the stability so desperately needed for these children and thus, we decline to go that route as well.

*v. Permissive Exception.* The law offers an avenue to avoid termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The parent bears the burden of establishing the exception to termination. *A.S.*, 906 N.W.2d at 476 (holding that "the parent resisting termination bears the burden to establish an exception to termination" and recognizing that it is up to the court's discretion whether to apply a factor). To meet that burden, mere mention of a bond between a parent and child is not enough; the parent must prove that the bond overcomes the need for termination. *Id.*; *see In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010) (explaining that "our consideration

must center on whether the child will be disadvantaged by termination," not whether the parent loves the child). Here, the two oldest children expressed deep connections with their current placement—requesting it be their permanent home and asking the grandfather to be the dad. The mother failed to meet her burden here as she has not demonstrated that the strength of her bond overcomes the need for termination by clear and convincing evidence. Instead, the need for permanency and the strong bond between the children and the grandparents leads us to conclude that termination remains the best option for these children.

**B. Father's Appeal.**

We now review the father's arguments on appeal. The father raises the same four issues with the juvenile court's decision, beginning with the grounds for termination of his parental rights to H.H.

*i. Grounds for Termination.* Like with the mother, the juvenile court relied on three separate grounds to terminate the parental rights of the father to H.H.: Iowa Code section 232.116(1)(d), (h), and (*l*). As we need only one ground to affirm, *see A.B.*, 815 N.W.2d at 774, and because the father's failure to make an argument challenging termination under paragraph (h) constitutes waiver of that issue, *see P.L.*, 778 N.W.2d at 40, based on this waiver, the requirements for termination under 232.116(1)(h) are met.

*ii. Best Interests of the Child.* Regarding the best interests of H.H., the father argues that H.H. has begun to recognize him at supervised visitation and is beginning to build a bond with him. This claim is not enough to demonstrate that maintaining the father's parental rights is in the best interests of H.H. Instead, we look to the child's safety and the need for a permanent home.

Regarding H.H.'s safety, we find that the concerns of the department social worker and the juvenile court about ongoing drug use and lack of honesty about that ongoing drug use are a substantial safety concern. Although the father returned a clean urine analysis in March 2023, he failed to follow the department's instructions to drug test earlier in the month, which the department considered a failed test. Even though he had drug tests associated with his parole status, the father failed to attend the department's five requested drug tests and would only test for his parole officer. And unlike the department's tests, the department social worker stated that the drug tests associated with probation are not random, as there is a fifty-fifty chance at any of the pre-scheduled meetings that the father will have to drug test. And, two of his tests with his parole officer were positive for methamphetamine, the most recent one in January 2023. Furthermore, the social worker had concerns that the father lied about continued drug use and did not fully or accurately report his relapse. Although the father has worked sporadically and the department does not have any concerns regarding his mental health, he has not found continuous or reliable employment and has not contributed financially for the care of H.H. Similarly, although the department did not cite mental-health concerns for the father, the lack of mental-health barriers does not overcome the substance abuse and safety concerns.

Furthermore, H.H. deserves stability and a permanent home. H.H. has never been in the care of the father. Prior to August 2022, H.H. was not in the care of the father because the father was incarcerated, and the child had no relationship with him. Now that more than one year has passed since the father was paroled, the father still cannot offer a permanent home, as the father is currently released

to probation at his mother's home. His mother's home most likely is not a permanent placement. Thus, we agree with the juvenile court that the best interests of H.H. require for termination of the father's parental rights to H.H.

*iii. Six-Month Extension.* The father makes a passing request for an additional six months in his appellate brief, but he fails to enumerate the specific factors, conditions, or expected behavioral changes that will remove the barriers to permanency in six months' time and has not listed any changes that he will implement that he has not already implemented in the two years that the juvenile case has been pending. To his credit, he made some progress, but the concerns over drug use as a stress reliever have not been addressed. Instead, the father only pointed to his lack of a required mental-health treatment plan. As the father has not detailed any specific progress that he expects to make, we agree with the juvenile court in not granting a six-month extension.

*iv. Guardianship.* As in the case of the mother, the father claims that a guardianship with the maternal grandparents is required as an alternative to termination. "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 472. We decline to order a guardianship instead of terminating the father's rights.

*v. Permissive Exception.* The father, finally, failed to meet his burden to demonstrate that the strength of his bond with H.H. will make it a disadvantage to H.H. to terminate the father's parental rights. Although the father pointed out that H.H. began to build a bond with him through their time spent together at supervised visitation over the last few months, the father failed to demonstrate that the bond outweighs H.H.'s need for stability and permanency. Instead, he merely

mentioned a bond between himself and H.H., which is not enough to outweigh the other considerations factoring towards termination. And the social worker testified there was no significant bond between the two as the child was only beginning to know the father. Therefore, we agree with the juvenile court and decline to rely on the permissive exception to avoid termination of the father's parental rights to H.H.

**IV. Conclusion.**

Because an argument on statutory grounds for termination under Iowa Code section 232.116(1)(f) for the mother as to S.H. and M.H. and (h) as to both parents for H.H. was waived the best interests of all three children require termination, a six-month extension would not cure the concerns regarding drug use and the children's safety for either parent, a guardianship is not appropriate as an alternative to termination, and the permissive exception is inapplicable because each parent failed to demonstrate that their bond with the children overcomes the need for termination, we affirm the termination of both parents' rights to H.H. and the mother's rights to M.H. and S.H..

**AFFIRMED ON BOTH APPEALS.**