**IN THE COURT OF APPEALS OF IOWA**

No. 24-1791
Filed January 9, 2025

**IN THE INTEREST OF L.H.,**
**Minor Child,**

**S.O., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Rebecca Williams, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

The juvenile court terminated a father's parental rights to his minor son pursuant to Iowa Code section 232.116(1)(e), (g), and (h) (2024). On appeal, the father challenges one of the statutory grounds for termination. He also contends termination is not in the child's best interests and that he should have been granted a six-month extension to work towards reunification. After our de novo review of the record, we affirm.

## I. Background Facts and Proceeding Facts

L.H. is the child who is the subject of this appeal. He was born in March 2024. L.H.'s birth brought his mother and father to the attention of the Iowa Department of Health and Human Services (HHS) because he tested positive for methamphetamine, amphetamine, and THC. HHS was already familiar with the mother and father because they had previously been involved in a child-in-need-of-assistance case (CINA) with L.H.'s older sister.[1] A day after his birth, L.H. was removed from his parents' custody. On March 27, he was adjudicated in need of assistance and placed in the custody of HHS for purposes of foster family care. L.H. was subsequently placed with a foster mother, who already had custody of his older sister.

Throughout the underlying CINA case and termination proceedings, HHS has expressed concerns over the father's history of problems with domestic abuse, substance use, and mental health. The record reveals the mother and father's relationship has been marred by several incidents of domestic abuse, which led to

---

[1] The father's parental rights to L.H.'s older sister were terminated on June 7, 2024.

the mother receiving a no-contact order. HHS asserts numerous violations of the no-contact order occurred during this case.

The father also has an extensive history of substance-use issues. He has admitted to regularly using methamphetamine since he was in middle school. As he told an HHS employee, "You drink coffee, I smoke meth." Additionally, on several occasions the father expressed to HHS that he believed the odds of him ever achieving sobriety were slim. According to him, his odds of achieving sobriety were low because "only two percent of people actually recover." He has also displayed a general hostility toward substance-use treatment programs, asserting "if he cannot get sober on his own in his own environment then he never will."

As for his history with mental health struggles, the father told an HHS case worker he has been "traumatized since birth" and "angry his whole life." According to him, he was diagnosed as a child with attention-deficit/hyperactivity disorder (ADHD), depression, and anxiety. He has acknowledged that his mental health needs to be addressed because it affects his substance use. During one interaction with an HHS case manager, it was reported that he stated "he is not suicidal, it's more homicidal."

Despite being offered a litany of services by HHS, the father made "essentially no progress." Although HHS had concerns over the father's history of domestic abuse, it never offered him services in this case to address those concerns. This was because the father had previously engaged in some services to address his domestic abuse issues in the CINA and termination case involving L.H.'s older sister, which overlapped slightly with this case. The father testified at the termination hearing that the services he previously engaged in for domestic

abuse helped him learn to better control himself. However, the father displayed an inability to control his anger during this case. After sending several hostile and threatening text messages to the HHS case manager—a communication plan had to be implemented between the father and the case manager.

At best, the father made minimal efforts to address his mental health. As the case manager explained during the termination hearing, HHS had no records of the father making any attempts to address his mental health. However, the father testified that he had recently started attending therapy. He also added he had recently started a medication regiment to help manage his mental-health issues.[2] But he did not provide any information on those efforts to HHS or the juvenile court.

The father also did not make meaningful progress in addressing his substance-use issues. The father completed a substance use evaluation in May 2024, which recommended inpatient treatment. On May 29, the father checked himself into an inpatient treatment facility. But he was unsuccessfully discharged from the treatment program after leaving the facility after two days. Additionally, the father never drug tested with HHS, despite thirty-eight requests to do so.[3] Throughout this case, the father admitted to regularly using methamphetamine. During the termination hearing, he testified to using methamphetamine just a few

---

[2] For additional context, the termination hearing was held on October 21, 2024. The father testified that he finally began efforts to address his mental health in either "September or late August" of 2024.

[3] We highlight the father was also required to drug test as a part of his probation for a criminal charge during this same period. The father has a lengthy criminal history, and he even committed additional criminal offenses during the pendency of this case. Despite being required to drug test, the father did not complete a drug test as a part of his probation after March 2024.

weeks earlier.[4]  Due to his failure to address HHS's well-documented concerns, the father never progressed beyond fully supervised visits with L.H.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e), (g), and (h).  This appeal followed.[5]

## II.  Standard of Review

Our review of termination of parental rights proceedings is de novo.  *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *In re C.Z.*, 956 N.W.2d 113, 120 (Iowa 2021) (citation omitted).  "As always, our fundamental concern is the child's best interests."  *J.C.*, 857 N.W.2d at 500.

## III.  Analysis

We utilize a three-step analysis to review termination of parental rights.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  We first consider whether any ground for termination under section 232.116(1) has been established.  *Id.*  If we find a ground for termination has been established, we then consult the best-interest framework provided in section 232.116(2) to determine whether termination is in the child's best interests.  *Id.* at 219–20.  Lastly, if we find that termination of parental rights is in the child's best interests, we consider whether any exceptions to termination under section 232.116(3) apply.  *Id.* at 220.

---

[4] The father testified during the termination hearing that he recently started to address his substance-use issues.

[5] The juvenile court also terminated the mother's parental rights to L.H., but she does not appeal.

"However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan 9, 2020). Because the father does not argue an exception to termination should have been applied, we limit our analysis to whether a statutory ground for termination was established and whether termination is in the child's best interests.

*1. Statutory Grounds*

The father's petition challenges the termination of his parental rights only under section 232.116(1)(h), but not under paragraphs (e) and (g). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record." *In re K.K.*, No. 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016) (citing *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010)). Because the father does not challenge termination under paragraphs (e) and (g), we find he has waived any claim of error on these grounds. *See In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022) (finding mother waived claim of error related to statutory grounds for termination not challenged in her petition). Accordingly, we affirm the juvenile court's decision that termination was appropriate under paragraphs (e) and (g).

*2. Best Interests*

In determining whether termination of parental rights is in the child's best interest, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State

has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).

The father contends terminating his parental rights is not in L.H.'s best interests due to their "clear" bond. We believe it goes without saying severing the parent-child bond can lead to negative consequences for the emotional and mental health of a child. *See generally* Vivek S. Sankaran & Christopher E. Church, *The Ties that Bind Us: An Empirical, Clinical, and Constitutional Argument Against Terminating Parental Rights*, 61 Fam. Ct. Rev. 1, 12-13 (2023) (describing the negative effects severing the parent-child relationship can have on a child's emotional and mental health). We also believe such negative effects can be magnified when the parent and child at issue share an especially close bond. Our best-interest framework expressly encourages courts to consider the emotional and mental health of a child. *See* Iowa Code § 232.116(2). Given the potential negative effects severing the parent-child bond can have on a child's emotional and mental health, especially if a close bond exists between the parent and child, we believe a close parent-child bond can be a relevant consideration in assessing a child's best interests.

However, even taking into consideration the "clear" bond between the father and L.H., we conclude that termination is in L.H.'s best interest. For almost his entire young life, L.H. has been cared for by his foster mother. He has flourished under her care, and she has expressed a desire to adopt him. L.H. has never been under the full-time care of either of his parents. Termination will enable L.H. to achieve permanency and the stability he needs. *See A.M.*, 843 N.W.2d at 112

(finding termination was in a child's best interest because of the permanency the adoption would offer the child).

We also find termination is in L.H.'s best interests because of the father's ongoing struggles with methamphetamine use. By the father's own admission at the termination hearing, he used methamphetamine just a few weeks before the hearing. He also admitted that it was not safe for L.H. to be in his care. It should go without saying that a parent's ongoing methamphetamine use creates an unsafe environment for a child. *See J.P.*, 2020 WL 110425, at \*2 ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). And safety of the child is one of the "defining elements in a child's best interests." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring).

Accordingly, we find termination of the father's parental rights is in the child's best interests.

*3. Six-Month Extension*

In his petition the father contends that, "based upon the history of this case," there should have been an "additional period of time for rehabilitation services." We take this to mean the father believes the juvenile court should have granted him a six-month extension to work toward reunification. But this cursory argument is not supported by any factual discussion or legal authority. Accordingly, we find this argument has been waived. *See In re A.M.*, No. 24-0428, 2024 WL 3050771, at \*3 (Iowa Ct. App. June 19, 2024) (concluding a mother's argument for an extension was waived because she did not support it with a factual discussion or legal authority).

**IV. Conclusion**

We affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**