# IN THE COURT OF APPEALS OF IOWA

No. 17-1081
Filed September 13, 2017

**IN THE INTEREST OF B.B.,**
**Minor Child,**

**V.B., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

The mother appeals from the termination of her parental rights. **AFFIRMED.**

Magdalena B. Reese of Cooper, Goedicke, Reimer, & Reese, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Kayla Stratton of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the termination of her parental rights to her child, B.B.[1] B.B. was born in February 2016 and was immediately removed from the mother's care due to ongoing concerns regarding the mother's ability to care for her children; her rights to her three older children had been terminated in December 2015.

The Iowa Department of Human Services (DHS) had become involved with the family in 2014. At the time, the mother demonstrated she was unable to care for a baby; she was not meeting the child's dietary needs as evidenced by inconsistent feedings and providing baby food to the baby before the child was ready. It was recommended the mother take a parenting class. She did not do so. Additionally, the mother was living with B.B.'s father, and there was a history of domestic violence in the relationship. Neither parent was able to set appropriate boundaries in their relationships. The department also had concerns about the mother's instability, which manifested itself in a number of ways, including inconsistent housing and employment and unresolved mental-health issues.

After B.B.'s removal in February 2016, the mother was told she needed to attend therapy to work through her history of domestic violence with the father; additionally, she needed to process what a healthy relationship looked like. The mother was also told it was important for her to gain parenting skills, including being able to demonstrate knowledge about a young child's nutrition needs.

---

[1] The parental rights of the father were also terminated; he does not appeal.

At the termination hearing in April 2017,[2] the mother testified she had not taken a parenting class. She also admitted she and the father had remained in a relationship throughout the entire pendency of the case, ending only one week before her testimony on April 4. The mother (and father) had lied to everyone involved regarding the status of their relationship. While the father continued to deny they had maintained their relationship, the mother provided text messages the two had sent each other as recently as March 2017 that corroborated her account. The mother had attended therapy at times in the preceding fourteen months, although she was not engaged in it at the time of the termination hearing. She had yet to address her history of domestic violence—both because she was being dishonest about the status of her relationship and because, according to her, when she tried to discuss it she would "just break down." The mother attended only two visits in February and none in March leading up to the April termination hearing. Additionally, the family safety, risk, and permanency provider testified the mother often needed to be told the same information multiple times, including information about nutrition, over-feeding, and what foods were appropriate. When asked, the provider could not say whether the mother was unable to retain the information or if she chose to disregard it.

The juvenile court terminated the mother's parental rights to B.B. pursuant to Iowa Code section 232.116(1)(d), (g), and (h) (2016). Here, the mother challenges the evidence supporting each of the three statutory grounds. We may affirm the termination if we find clear and convincing evidence to support any one of the grounds. *See In re M.W.*, 876 N.W.2d 212, 222 (Iowa 2016). We review

---

[2] The termination hearing took place over four dates in April 2017.

the proceedings de novo, meaning we review both the facts and the law and then adjudicate rights anew. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

We consider the sufficiency of the evidence under Iowa Code section 232.116(1)(g).[3] The mother challenges only the final two prongs—namely that she is unable or unwilling to respond to services and that additional services would not correct the situation. The mother had made some positive steps prior to the termination hearing. She reported she had recently moved in with her parents and was receiving support from them to "get on her feet." The mother was also seeing someone for medication management and was taking a prescription to help with her anxiety and depression, although she was still "having [her] ups and downs."

However, the mother had yet to address in any meaningful way the issues that led to the termination of her rights to her other three children in December 2015. The mother had yet to take a parenting class, although it had been recommended since DHS got involved with the family in 2014. And she had not learned the parenting skills elsewhere; as noted, the mother still needed to be redirected when it came to feeding B.B. at visits. Additionally, the mother had not

---

[3] Iowa Code section 232.116(1)(g) allows the court to terminate parental rights where there is clear and convincing evidence of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

addressed her history of domestic violence and had secretly remained in a relationship with the father throughout the pendency of the case. At trial, she admitted that when she showed up to a family team meeting in July 2016 with two black eyes, it was the father who had caused them. Yet she remained with him until March 2017. And although the mother testified "this time [she is] officially done" with the father, we see no reason to believe she will not change her mind again. She had yet to work with her former therapist on her issues with domestic violence. Additionally, the mother's psychosocial evaluation indicated she had "extreme dependency and . . . a tendency to demand attention from others." There is clear and convincing evidence the mother—for whatever reason—has not responded to services. *See* Iowa Code § 232.116(1)(g)(3).

The mother testified more time would allow her to correct the situation. *See id.* § 232.116(1)(g)(4). But the mother has had three years and two separate termination proceedings to begin engaging in the necessary services, and she has not done so. Moreover, the mother testified she would get back into therapy and would find a parenting class, but even she recognized the similarities between the two termination proceedings, testifying, "With my other kids I messed up real bad, I didn't go to no visits, I didn't do therapy, but with [B.B.'s] case I had gaps between therapy and visits but I'm going to start showing you guys I want [B.B.] back." Although the mother understands what steps she needs to take so B.B. could be safely returned to her, considering her past conduct, we do not believe we can expect her to follow through. *See, e.g., In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re K.F.*, No. 14-0892, 2014 WL

4635463, at *4 (Iowa Ct. App. Sept. 17, 2014) ("What's past is prologue."). There is clear and convincing evidence additional time for services would not correct the situation. *See* Iowa Code § 232.116(1)(g)(4).

Next, the mother claims termination of her parental rights was not in B.B.'s best interests. *See id.* § 232.116(2). In reaching our conclusion, we consider "the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* The mother has not demonstrated she has the skills to safely parent B.B. Up until a week before the hearing, the mother was living off and on with B.B.'s abusive father. Additionally, the mother still needed directions regarding B.B.'s nutritional needs and how to meet them. In contrast, the social worker testified B.B. was "doing wonderful in [his] placement" with a foster family. To the mother's credit, she recognized that B.B. was comfortable in the home of the foster family and stated that she "would love him to stay" with the foster family if he could not be returned to her care. The mother was not able to begin caring for B.B. after fourteen months, and it is unclear if she would ever be in a position to parent him. Termination of her parental rights is in B.B.'s best interests.

Finally, the mother claims her parental rights should not have been terminated because of the close bond she shares with B.B. *See id.* § 232.116(3)(c). The mother loves B.B., and they do share a bond. But nothing in the record indicates the bond is so close that termination will be detrimental to B.B. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("Although it is clear that [the mother] loves her son, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes

[the mother's] inability to provide for [the child's] developing needs."). B.B. has never been in the mother's care. Additionally, in the two months leading up to the termination hearing, the mother attended only two visits with B.B. Although he appears happy during visits with her, B.B. has relied on others to meet his needs throughout the entire fourteen months of his life. We cannot say a permissive factor applies to make termination unnecessary.

We affirm the juvenile court order terminating the mother's parental rights.

**AFFIRMED.**