**IN THE COURT OF APPEALS OF IOWA**

No. 25-1384
Filed October 29, 2025

**IN THE INTEREST OF Z.V.,**
**Minor Child,**

**K.V., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Gina L. Kramer of Kramer Law Office, PLLC, for appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Bridget Goldbeck of Hughes & Trannel P.C., Dubuque, attorney and

guardian ad litem for minor child.


        Considered without oral argument by Ahlers, P.J., and Chicchelly and

Sandy, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to Z.V., born in 2021.[1] She challenges the grounds for termination and claims that terminating her parental rights would be detrimental to the child based on the closeness of the parent-child relationship. Because clear and convincing evidence shows the grounds for terminating the mother's parental rights under section 232.116(1)(g) (2025) and termination will not be detrimental to the child, we affirm.

## I. Background Facts and Proceedings.

The Iowa Department of Health and Human Services has a long history with the mother, offering her services off and on for a total of ninety-three months. The department first became involved in June 2012 based on allegations that the mother's first child was being physically abused by the father. That child later died from injuries the father inflicted, but the mother minimized the father's role in the death and reunited with him on his release from prison. In 2015, the juvenile court terminated parental rights to her second child based in part on the mother's substance use. Her substance use resulted in the department finding that the mother perpetrated child abuse against her third child in 2017 and 2019.[2]

The juvenile court removed Z.V. from the mother's custody when he was five months old due to the mother testing positive for methamphetamine. In February 2024, the department investigated allegations of domestic violence between the mother and her boyfriend, which the mother denied. It was also

---

[1] The juvenile court also terminated the parental rights of the father, N.R., but that termination is not at issue on appeal.

[2] Although N.R. fathered three of the mother's children, the third child has a different father, with whom she is placed.

alleged that the mother used methamphetamine while caring for the child. The mother and child tested positive for methamphetamine, but the mother claimed she had not used methamphetamine since a one-time relapse in December 2023.

The juvenile court adjudicated the child in need of assistance (CINA) in June 2024. After testing negative for all substances, the mother progressed to semi-supervised visits with the child in September and to unsupervised visits in October. The child tested positive for methamphetamine later that month while the mother tested negative. But after the mother's boyfriend was discovered at an unsupervised visit in November, the mother's visits reverted to fully supervised and remained so throughout the remainder of the proceedings.

The mother completed phase one of substance-use treatment in December 2024 but chose not to participate in continuing care. She continued testing negative for illegal substances, but the department was concerned that the mother was using alcohol instead. A worker noted the mother's speech was slurred during a couple of phone calls, and the mother became "frustrated very quickly" when asked about her alcohol use. Although alcohol is more difficult to detect during chemical testing because it leaves the body quickly, the mother tested positive for alcohol use in March 2025.

The mother's boyfriend was arrested again for domestic violence against the mother in April 2025. The mother admitted to the police that there had been other incidents of domestic violence. Alcohol use played a role in the incident, as the mother's boyfriend admitted they were drinking to excess together almost every day. The next month, the worker observed a garbage can full of alcohol beverage containers at the mother's home.

The State petitioned to terminate the mother's parental rights to the child. After a hearing was held on the petition in July, the juvenile court granted the petition to terminate the mother's parental rights under Iowa Code section 232.116(1)(g), (h), and (*l*). The mother appeals.

## II. Scope and Standard of Review.

"We generally review CINA proceedings and termination of parental rights proceedings de novo." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). We review both the facts and the law, and we adjudicate rights anew. *Id.* "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024) (citation omitted).

## III. Grounds for Termination.

The mother first contends the juvenile court erred by terminating her parental rights because the State failed to prove the grounds by clear and convincing evidence. We may affirm termination if the record supports any of the three grounds cited by the juvenile court. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). The court may terminate parental rights under section 232.116(1)(g) if clear and convincing evidence shows:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The mother challenges the evidence showing the final two elements: she has not responded to services and more time will not change the situation. *See* Iowa Code § 232.116(1)(g)(3), (4). These elements apply to "parents who continue to repeat their parenting wrongs in spite of the services they've received in both the past and present termination cases." *In re J.H.*, 952 N.W.2d 157, 166–67 (Iowa 2020). Past termination cases involving the parent, especially those involving similar circumstances, are "highly relevant" in proving a parent lacks the ability or willingness to respond to services. *Id.* at 167.

Clear and convincing evidence shows that the mother failed to respond to services and more time will not lead to a different outcome. Her substance use resulted in nine child abuse assessments naming her as a perpetrator and the 2015 termination of her parental rights to a child. She continued to struggle with substance use despite attending several treatment programs. The mother's claim that she has been sober since December 2023 does not inspire confidence in view of her positive test for methamphetamine in March 2024, and there is ample evidence suggesting that she replaced her use of controlled substances with alcohol use.[3] The social worker case manager testified that while the mother has demonstrated some short-term sobriety over the years, the issues resume once services are removed.

---

[3] The mother was diagnosed with alcohol-use disorder but testified that the issue was "more of who I keep around kind of thing. If the person is around me drinking, I'm drinking I guess."

The mother also admits that she "keep[s] repeating" her relationships with men who perpetrate domestic violence despite the danger that it presents to the child. She lied about continuing her relationship with the boyfriend who committed domestic violence against her in February 2024 and allowed him to be present during an unsupervised visit with the child. Their relationship culminated in another incident of domestic violence in April 2025. Despite the department offering the mother services since 2012, the social worker case manager noted that

> we have seen multiple men that have criminal violent history or have brought drugs around her children, and [the mother] has not been able to prevent that. So I can't say that in the near future, although she may have engaged in some services recently or repeatedly over the years engaged in these services, I can't say that there's going to be change in the shorter term that will allow her to safely parent her children.

The child's guardian ad litem expressed similar concerns about the mother's progress:

> [The mother's] continued refusal to comply with the safety plan when she can get away with it makes me question (1) how many times has the safety plan been violated and she hasn't been caught, (2) whether she has the protective capacity to keep the children safe in her care, and (3) whether [the mother] could place the needs of the children ahead of her own need for male companionship. . . . If [the mother] refuses to acknowledge the domestic violence, how can she keep the child[] safe from similar incidents in the future?

The issues that resulted in the termination of the mother's parental rights to her second child continued one decade later despite the involvement of the department and the juvenile court. The child was forty-five months old at the time of the termination hearing and had been out of the mother's custody for a total of thirty months. The mother admitted that her substance use "repeatedly posed a risk to the [child's] care and safety . . . when [he's] been with [her]" and she has

not "been able to consistently put those protective capacities together to allow him to be in [her] care." The State has proved the grounds for terminating the mother's parental rights under section 232.116(1)(g).

The mother also seeks to avoid termination under section 232.116(3), which provides that the court "need not terminate the relationship between the parent and child" if "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). To avoid termination on this basis, clear and convincing evidence must show "that, on balance, [the closeness of the parent-child] bond makes termination more detrimental than not." *W.M.*, 957 N.W.2d at 315. The mother bears the burden of proof. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). If she meets her burden, the court exercises its discretion in determining whether to preserve the parent-child relationship based on the circumstances of the case and the child's best interests. *Id.* at 475.

The mother has not shown that terminating her parental rights will be detrimental to the child. The mother has not cared for the child for two-thirds of his life. Because the mother has not met her burden of proving section 232.116(3)(c), we affirm the termination of her parental rights.

**AFFIRMED.**